**D. D. WILLIAMS, Independent Executor of the Estate of James N. McKnight, Jr., Deceased, Petitioner,**

**v.**

**Mabel S. McKNIGHT, Respondent.**

**No. A–10955.**

Supreme Court of Texas.

May 4, 1966.

Rehearing Denied June 1, 1966.

Thornton & Thornton, Rick P. Fisher, with above firm, Olney, for petitioner.

Nelson, Montgomery & Robertson, Wichita Falls, for respondent.

POPE, Justice.

Petitioner, D. D. Williams, as Independent Executor and Trustee under the will of James N. McKnight, Jr., deceased, filed this action against Mabel S. McKnight, the decedent's widow, to recover for the estate one-half of three savings accounts which she withdrew after the death of her husband. Petitioner contends that the funds belonged to the community estate of Mr. and Mrs. McKnight. Respondent, Mabel McKnight, contends that she and her husband complied with the 1961 amendment to Section 46 of the V.A.T.S. Probate Code by executing an agreement as to each account and that the agreements effected a partition of their community funds and the creation of joint accounts with rights of survivorship in her as the survivor. The trial court and the Court of Civil Appeals sustained that contention and held that the funds belonged to the widow as the survivor. 391 S.W.2d 813. We reverse the judgments of the courts below and render judgment that the funds were community funds, one-half of which belong to the estate of James N. McKnight.

The case is before us on an agreed statement of facts. James N. McKnight and his wife, Mabel S. McKnight, in 1962 made three separate deposits of $10,000 in savings accounts with three different institutions. All of the funds came from their community funds and nothing was thereafter added to or withdrawn from the accounts. On May 9, 1962, they deposited $10,000 with the City National Bank in Wichita Falls, Texas. On February 4, 1963, they deposited a like amount with the First-Wichita National Bank of Wichita Falls, Texas. They signed the signature cards at each of the banks. The agreements on the cards at those two banks were substantially the same. That of the First-Wichita National Bank was as follows:

"The joint depositors signing above agree, each with the other and with the above named bank, that all sums now or later deposited by either or both of such joint depositors in such account with all accumulations thereon, are and shall be owned by them jointly with the right of survivorship. The amounts in such savings account may be withdrawn by any one of such depositors or by the survivor or either of the survivors after the death of the other joint depositor or depositors. Each appoints the other his agent with power to deposit in said joint account moneys of the other and for that purpose to enforce any check, draft, note or instrument payable to the order of the other or all of such joint depositors, and each hereby ratifies and confirms any and all representations hereafter made by any of them with respect to the loss, theft or destruction of the passbook herewith issued to them. Payment to the survivor or either of these survivors shall be subject to the laws relating to inheritance and succession taxes and all rules and regulations made pursuant thereto. The rights of the bank hereunder this agreement shall not be changed or terminated by the said depositors or either of them except by written notice to the said bank which shall not affect transactions theretofore made."

On May 9, 1962, the McKnights made a similar deposit in Parker Savings and Loan Association, Wichita Falls, Texas. The signature card they signed at that institution also purported to create a joint tenancy with right of survivorship but it contained the additional agreement: "It is agreed by the signatory parties with each other and by the parties with you, that the

funds placed in or added to the account by any one of the parties is and shall be conclusively intended to be a gift at that time of such funds to the other signatory party or parties to the extent of his or their pro rata interest in that account." Respondent does not, however, contend that she owns the account by reason of a gift. Her only contention with respect to this deposit is that Section 46 of the Probate Code authorized the creation out of community funds of a joint account with right of survivorship.

In Hilley v. Hilley, 161 Tex. 569, 342 S.W.2d 565 (1961), this Court held that to create a joint tenancy with right of survivorship out of community property, such property must be transmuted into separate property by partition prior to the agreement creating the joint tenancy with right of survivorship. Further, we held that the partition must be accomplished in accordance with the provisions of Article 4624a, Vernon's Ann.Tex.Civ.St.,[1] since Section 46 of the Probate Code did not inferentially repeal or modify such statutes as

Articles 4613, 4614, 4619, 4624a and 881a–23.[2] The thrust of our holding in Hilley was that the separate property of spouses, not community property, may be the subject of a joint tenancy between them, with right of survivorship. When the property is initially community, it must be rendered separate by statutory partition before survivorship rights arise from a joint tenancy agreement between husband and wife.

Shortly after our opinion in Hilley, the Fifty-Seventh Legislature in 1961, amended Section 46 of the Probate Code by adding one sentence. The section, as it existed before amendment is here stated and the sentence that the Fifty-Seventh Legislature added is italicized:

"Where two (2) or more persons hold an estate, real, personal, or mixed, jointly, and one (1) joint owner dies before severance, his interest in said joint estate shall not survive to the remaining joint owner or joint owners, but shall descend to, and be vested in, the heirs or legal representatives of such deceased joint owner in the same manner as if his in-

---

1. Art. 4624a. Section 1. "A husband and wife, without prejudice to pre-existing creditors, may from time to time, by written instrument as if the wife were a feme sole, partition between themselves in severalty or into equal undivided interests all or any part of their existing community property, or exchange between themselves the community interest of one spouse in any property for the community interest of the other spouse in other community property. Such partition or exchange shall be effectuated by a written instrument subscribed and acknowledged by both spouses in the manner now required by law for the conveyance of realty; whereupon the property or interest in property set aside to each spouse by such instrument shall be and constitute a part of the separate property of such spouses.

"Such partition shall not be good or effectual against a purchaser in good faith, without notice thereof and for a valuable consideration, nor against any creditor unless filed for record with the County Clerk of the county or counties in which such property shall be situated.

"If such instrument purports to exchange property or to partition property

between the husband and wife, otherwise than as equal undivided interest in the same property, or as equal shares or units of identical personal property, such instrument shall not be valid unless approved by the Court upon written application of the husband and wife, addressed to the District Court of the county in which they or either of them reside. Such petition must set out facts showing that the transaction is not to the disadvantage of the wife, and shall be filed and docketed as in other cases, and at any time thereafter the District Court may, in term time, take up and hear said petition and evidence in regard thereto, and enter an order accordingly either approving or disapproving the transaction."

2. Article 881a–23 was later amended and provided that the parties could partition community funds by a written and acknowledged instrument. Acts 1957, 55th Leg., p. 1319, ch. 445. It was again amended after the date of the McKnight deposits and is now Section 6.09 of Article 852a. Acts 1963, 58th Leg., p. 269, ch. 113.

terest had been severed and ascertained. Provided, however, that by an agreement in writing of joint owners of property, the interest of any joint owner who dies may be made to survive to the surviving joint owner or joint owners, but no such agreement shall be inferred from the mere fact that the property is held in joint ownership. *It is specifically provided that any husband and his wife may, by written agreement, create a joint estate out of their community property, with rights of survivorship."*

■ The amendment attempts to authorize spouses to create a joint estate with rights of survivorship "out of their community property." In *Hilley,* we stated the reasons that this result could not constitutionally be accomplished, and those reasons are as valid after the amendment as they were before. Constitutional limitations are as binding upon the Legislature as they are upon the Judiciary.

■ Section 46 does not speak of partition. Moreover, it is a very old principle of law that the husband and wife cannot, by mere agreement, partition and transfer their community property to each other and effect a change of the class of the estate which the Constitution fixes upon the property. Green v. Ferguson, 62 Tex. 525, 529 (1884); Cox v. Miller, 54 Tex. 16 (1880); Pevehouse v. Lubbock National Bank, 79 S.W.2d 1107 (Tex.Civ.App.1935, no writ). Neither Section 46 nor the agreements between Mr. and Mrs. McKnight mention a partition, but Mrs. McKnight urges that it was implicit in both the statute and the agreements. This contention is necessary in order to arrive at the separate property which alone may be the subject of an agreement for a joint tenancy with right of survivorship between husband and wife. This same contention was urged in *Hilley* and we rejected it as a fictional partition of community property into separate property. When the Constitution authorized a marital partition of prop-

erty, it did not contemplate that fictions, presumptions, nor even legislative declarations of intention would undo constitutionally defined community properties. Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799 (1925). Mr. and Mrs. McKnight could not make an effective agreement concerning their community funds until they first reduced those funds to their separate estates. Unless we indulge in the fictions denounced in *Hilley,* it is clear that they did not deal with their separate estates in the instant case.

■ In so far as Section 46 authorizes spouses to create by agreement a joint estate with rights of survivorship *out of their community property,* it is violative of the Constitution. Statutory partition with the resulting separate property is the necessary prerequisite to a written agreement between husband and wife to create a joint estate with rights of survivorship.

■ An amicus curiae brief suggests, though it is not so contended by the parties, that at least with respect to the account with the Parker Savings and Loan Association, we should hold that there was a gift from the husband to the wife of his community interest, and that this was a gift of the present right to withdraw funds from the account as well as title to the entire account at his death if she survived him. As discussed in *Hilley,* there was consideration from each; and it was derived from the community estate. Consideration precludes the idea of a gift. Kearse v. Kearse, 276 S.W. 690 (Tex. Comm.App.1925). The right or interest of the spouses for that reason remained a part of the community estate.

The judgments of the courts below are reversed and judgment is here rendered that petitioner have and recover from respondent, Mabel McKnight one-half of the three savings accounts in the sum of $15,000 together with interest from the time of her withdrawal of those funds from the respective depositories.