**REPUBLIC INSURANCE COMPANY, Appellant,**

v.

**M. Dean BOLTON, Appellee.**

No. 19492.

Court of Civil Appeals of Texas, Dallas.

March 23, 1978.

Rehearing Denied April 18, 1978.

Barry H. Fanning, Fanning & Harper, Dallas, for appellant.

Randy Taylor, Dallas, for appellee.

ROBERTSON, Justice.

M. Dean Bolton sued Republic Insurance Company, his insurer, for medical expenses and lost wages under the Personal Injury Protection (PIP) endorsement to his family automobile insurance policy. The injuries which formed the basis of Bolton's claim resulted from an accident which occurred while he was driving a modified Volkswagen, referred to as a "dune buggy," in an off-road race in Oklahoma. The sole disputed issue at trial was whether the dune buggy was a "motor vehicle" under the terms of the policy.[1] This issue was submitted to a jury, which found that the dune buggy was a motor vehicle within the meaning of the policy. The trial court ren-

---

1. The parties stipulated that Bolton had suffered $2,500 in medical expenses and lost wages. They also agreed that if the PIP en-

dorsement was applicable, Republic would be liable for the stipulated $2,500 sum, together with $650 in attorney's fees.

dered judgment upon the verdict, and Republic now appeals. We affirm.

Republic's initial argument is that the issue of whether the dune buggy was a motor vehicle under the policy was a question of law which should not have been submitted for jury determination, and hence, that the jury's finding should be disregarded and judgment rendered against Bolton's claim. Alternatively, Republic urges that the jury's finding is against the great weight and preponderance of the evidence.

The only special issue submitted to the jury read as follows:

Do you find from a preponderance of the evidence that at the time and on the occasion in question the dune buggy driven by the plaintiff was a motor vehicle within the meaning of the policy?

"Motor vehicle" means an automobile and any other vehicle, including a trailer, operated or designed for operation upon a public road by any power other than animal or muscular power.
Answer: "It was such a motor vehicle"
or
"It was not such a motor vehicle"
Answer: *It was such a motor vehicle.*

■ Republic argues that this issue erroneously submits a question of law, and that accordingly, the jury's answer thereto must be disregarded. We disagree. Although we recognize that issues which require a jury to pass on the legal effect of a written instrument, such as an insurance policy, are generally improper, *Stuckey v. Union Mortgage & Investment Company, Inc.,* 383 S.W.2d 429, 439 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.); *Alamo Casualty Co. v. Trafton,* 231 S.W.2d 474, 478 (Tex.Civ.App.—San Antonio 1950, writ dism'd), this impropriety may be cured by an adequate explanatory instruction or definition. *Rodman Supply Co. v. Parker,* 363 S.W.2d 838, 842 (Tex.Civ.App.—El Paso 1962, writ ref'd

n. r. e.); *Home Insurance Company of New York v. Young,* 97 S.W.2d 360, 367 (Tex.Civ.App.—Fort Worth 1936, writ dism'd). In the present case, the term "motor vehicle" was defined in precisely the same language used in the policy,[2] and the jury was thus restricted to considering the facts of the case as they related to that particular definition. Under the submitted definition, the question of whether a vehicle is "operated or designed for operation upon a public road" must be determined by the facts of the case with respect to the character of the particular vehicle involved, and if the evidence permits opposing inferences to be drawn, a jury issue is presented.

■ We conclude that the evidence in this case raises a fact issue for the jury. Republic argues that no jury question is presented because the vehicle was used for racing on dirt or sand tracks, and was not driven on the public highways. It points to evidence showing that the vehicle could not have met state inspection standards because it lacked a proper muffler, turn signal lamps and other required equipment. It also had oversize rear tires and other special equipment designed for racing. The vehicle was not licensed in either Texas or Oklahoma, and it was towed, not driven, to the race in which Bolton was injured.

Bolton, however, testified that he assisted in building the vehicle, and that it was designed for driving on all types of terrain. According to his testimony, the dune buggy was comparable to a jeep, and it could be driven either on or off the road. Gordon Mayfield, the vehicle's owner,[3] stated in his deposition that dune buggies could be and frequently are driven on the streets. He further stated that all dune buggies were designed to run either on or off the road, and that where the vehicle is driven is simply a matter of the driver's preference. Both Bolton and Mayfield stated that the defects which barred state inspection could be easily and quickly cured.

2. As defined in the policy, a motor vehicle is "an automobile and any other vehicle including a trailer operated or designed for operation upon a public road by any power other than animal or muscular power."

3. The question of whether Bolton may recover under PIP endorsement for injuries sustained in an non-scheduled vehicle owned by another person is not raised on this appeal.

**442**

Under these showings, we cannot say that there was no evidence to support submission to the jury or that the jury's finding is against the great weight and preponderance of the evidence. Despite Republic's arguments, the question is not the *legality* of the vehicle's operation on the public streets; rather, the issue is simply whether the design of the vehicle is appropriate to its use, at least partially, as a means of transportation on the public highways. Although state inspection and licensing requirements might be conclusive in deciding the principal use of the vehicle, the policy in this case does not require such a determination before liability is imposed. *Cf. Williams v. Cimarron Insurance Company,* 406 S.W.2d 173 (Tex.1966) (under policy which excluded coverage of vehicles "designed for use *principally* off public roads," an unlicensed stripped-down stock car racer which was not equipped with required safety equipment such as headlights, taillights and horn held not within policy coverage); *Beck v. Unigard Insurance Company,* 271 Or. 261, 531 P.2d 907 (1975) (unlicensed stock car racer never operated on public road held within policy exclusion of "other equipment designed for use *principally* off public roads"); *Walcott v. Hawkeye-Security Insurance Company,* 189 Neb. 161, 201 N.W.2d 817 (1972) (modified stock car racer held excluded under policy which did not cover "equipment designed for use *principally* off public roads"); *Kansas Farm Bureau Insurance Company v. Cool,* 205 Kan. 567, 471 P.2d 352 (1970) (dune buggy operated off the road held excluded from coverage of policy which did not cover "equipment designed for use *principally* off public roads"); *Livingston v. Nationwide Mutual Insurance Company,* 295 F.Supp. 1122 (D.S.C.1969) (automobile, altered for racing, held within policy provision excluding coverage of vehicle "designed *principally* for use off public roads"); *Beagle v. Automobile Club Insurance Company,* 176 N.E.2d 542 (Ohio C.P. 1960) (modified stock car held excluded from coverage under policy provision disclaiming coverage of equipment "designed for use *principally* off public roads").

In the absence of some limiting provision in the policy, such as those in the cases cited above, we cannot read the policy provisions so narrowly that recovery would be barred as a matter of law, by a temporary and easily remedied defect or lack of equipment that would preclude the vehicle from passing state inspection. The vehicle's susceptibility to state inspection and licensing, together with its present use as a racing vehicle, were simply evidentiary considerations bearing on the vehicle's design. In view of the conflicting evidence, we conclude that the jury's verdict has adequate support.

Affirmed.