**Frank L. (Jack) MAPLES, Jr., Independent Executor of the Estate of Frank L. Maples, Sr., Deceased, Petitioner,**

**v.**

**Necil NIMITZ, Successor Administratrix of the Estate of Ruth Cochran Maples, Deceased, Respondent.**

**No. C–62.**

Supreme Court of Texas.

May 6, 1981.
Application to Transfer Denied
June 10, 1981.

Stephenson, Thompson & Dies, Martin W. Dies, Orange, for petitioner.

Louis Dugas, Jr., Orange, for respondent.

BARROW, Justice.

Necil Nimitz, administratrix of the estate of Ruth Cochran Maples, filed this cause against Frank L. (Jack) Maples, Jr., independent executor of the estate of Frank L. Maples, Sr., seeking to recover property allegedly belonging to the estate of Ruth Maples. The trial court rendered judgment on the jury verdict that all realty and personalty in dispute was the community property of Frank and Ruth Maples and Ruth's estate was awarded judgment for one-half of such property. The court of civil appeals reformed the trial court judgment to delete recovery for funds on deposit at a named bank and, as reformed, affirmed the trial court judgment. 610 S.W.2d 794. Only Jack Maples complains of the judgment of the court of civil appeals. We affirm.

Ruth Cochran and Frank Maples were married in 1951 and lived together until Ruth's death in 1977. Frank died a year later. The couple operated Maples Trailer Park in Orange during their marriage. There were no children born of this marriage. Ruth had three children by a prior marriage, including Necil Nimitz; and Jack was Frank Maples' son by a prior marriage. Ownership of two items of property are in controversy on this appeal: (1) thirteen and one-half acres of land; and (2) a savings account with the First Savings Association of Orange, Texas in the name of "Mr. or Mrs. Frank Maples."

A ten acre tract on which the couple operated Maples Trailer Park was conveyed to Frank in 1921. In 1948 Frank acquired an eight acre tract of undeveloped land across the street from the ten acre tract. However, all but three and one-half acres of the latter tract was sold before Ruth's death. It is undisputed that both tracts were his separate property at the time of their acquisition. For purposes of this appeal, both tracts are considered as one piece of property. Jack testified that in 1955 Frank conveyed the land to him. In 1972, during the marriage of Frank and Ruth, the property was conveyed to Frank by Jack and it remained in Frank's possession until the death of Ruth. Under these facts, there is a presumption that the property was community property of Frank and Ruth at her death. Section 5.02 of the Family Code[1] provides that "[P]roperty possessed by either spouse during or on dissolution of marriage is presumed to be community property." *See: Cockerham v. Cockerham*, 527 S.W.2d 162 (Tex.1975); *McKinley v. McKinley*, 496 S.W.2d 540 (Tex. 1973); *Tarver v. Tarver*, 394 S.W.2d 780 (Tex.1965).

---

1. All statutory references are to Texas Revised Civil Statutes Annotated.

Jack recognizes the validity of this presumption but urges that it is inapplicable in this cause for two reasons: (1) the 1955 deed was not introduced into evidence and Jack's oral testimony that there was a conveyance is ineffective to convey legal title from Frank Maples to Jack; and (2) assuming that title was in him prior to the 1972 conveyance, Jack urges that he merely held it in trust for his father and that by the 1972 deed, he merely reconveyed Frank's separate property.

It must be recognized at the outset that this was not a trespass to try title case and Mrs. Nimitz was not required to establish a formal chain of title. Jack's unchallenged admission against interest that the tract was conveyed to him in 1955 was sufficient to establish this fact. This admission is corroborated by the fact that the inventory of Frank Maples' safety deposit box which was made subsequent to his death included a 1955 deed from Frank to Jack.

A more difficult question is raised by Jack's contention that he was merely holding the property in trust for his father from 1955 until 1972. Jack testified that his father conveyed the land to him in 1955 because his father had sustained a heart attack and because of threats of some unexplained nature by the Nimitz family. It is established that the property was exclusively in Jack's name for seventeen years. During that period six deeds of trust on this property were executed by Jack as security for loans. Jack testified that these loans were made to his father for improvements to the trailer park, although Jack conceded that all loans were made in Jack's name. Although the 1972 deed recites consideration, Jack testified that none was actually paid by his father. Jack urges that his return of the property to his father in 1972 was in the nature of a gift. Since Jack was an interested party and his uncorroborated testimony that Frank paid no consideration for the 1972 deed could not be disputed by Mrs. Nimitz, this testimony was not conclu-

sive. *Praetorian Mutual Life Insurance Co. v. Sherman*, 455 S.W.2d 201 (Tex.1970). We conclude there is more than a scintilla of evidence that the property belonged to Jack before it was conveyed to Frank in 1972 for a valuable consideration.

█ The jury found in response to Issue No. 1 "that the land conveyed in a deed to Frank L. Maples, Sr. from Frank L. (Jack) Maples, Jr. on the 19th day of April 1972 is the community property of Frank and Ruth Cochran Maples."[2] Jack objected to the submission of Issue No. 1 because it calls for a legal conclusion. In connection with this objection, Jack requested issues which would have inquired if the land was conveyed to Frank by Jack as a gift. These requested issues were refused by the trial court. The trial court instructed the jury in connection with Issue No. 1 that all property acquired during marriage by gift is separate property. "Community property" was also defined by the trial court. Jack did not object to these explanatory instructions given with Issue No. 1.

Rule 277, Texas Rules of Civil Procedure, as amended effective September 1, 1973, authorizes the trial court in its discretion to submit issues broadly. This amended rule expressly provides that in submitting the case, "the court shall submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict and in such instances the charge shall not be subject to the objection that it is a general charge." Here the broad issue when properly considered with the court's instructions required the jury to resolve the disputed fact issue as to whether Jack was holding the property in trust for his father from 1955 until 1972. The court did not err in submitting the issue broadly along with appropriate instructions. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931 (Tex.1980); *Republic Ins. Co. v. Bolton*, 564 S.W.2d 440 (Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.).

2. All other jury issues were conditioned upon a finding that this land is not community property.

We conclude that the courts below properly held that under the verdict of the jury the real estate conveyed to Frank during his marriage to Ruth was community property. Her estate was correctly awarded an undivided one-half interest in this property.

 The other property in dispute on this appeal is a savings account in the names of "Mr. or Mrs. Frank Maples" with the First Savings Association of Orange, Texas. This account, which was opened during the marriage with presumptively community funds, is a joint account with the right of survivorship. The agreement which Frank and Ruth signed at the time the account was opened provides in pertinent part:

As joint tenants with right of survivorship and not as tenants in common, and not as tenants by the entirety, the undersigned hereby apply for a savings account in

First Savings Association of Orange

and for the issuance of evidence thereof in their joint names described as aforesaid. You are directed to act pursuant to any one or more of the joint tenants' signatures, shown below, in any manner in connection with this account and, without limiting the generality of the foregoing, to pay, without any liability for such payment, to any one or the survivor or survivors at any time. This account may be pledged in whole or in part as security for any loan made by you to one or more of the undersigned. Any such pledge shall not operate to sever or terminate either in whole or in part the joint tenancy estate and relationship reflected in or established by this contract. It is agreed by the signatory parties with each other and by the parties with you that any funds placed in or added to the account by any one of the parties *are and shall be conclusively intended to be a gift and delivery* at that time of such funds to the other signatory party or parties to the extent of his or their pro rata interest in the account. You are authorized to accept checks and other instruments for credit to this account, whether payable to one or more of the parties, and to supply any needed endorsement. You are relieved of any liability in connection with collection of all items handled by you without negligence, and shall not be liable for acts of your agents, sub-agents or others or for any casualty. Withdrawals may not be made on account of such items until collected, and any amount not collected may be charged back to this account, including expense incurred, and any other outside expense incurred relative to this account may be charged to it.

Note: The correct way to establish a common law joint tenancy or its equivalent in any state is to use "and" in joining tenants' names on all evidence of the account. All tenants should sign this card. Rule out unused signature line.

It is urged by Jack that this agreement was sufficient under Article 852a, Section 6.09 to constitute a partition of this community property so as to pass title to Frank to all funds remaining in the account upon the death of Ruth. The court of civil appeals disagreed and held that a valid joint tenancy with right of survivorship of community property could not be accomplished without a two-step procedure. It held this result was mandated by the prior holdings in *Hilley v. Hilley*, 161 Tex. 569, 342 S.W.2d 565 (1961); *Williams v. McKnight*, 402 S.W.2d 505 (Tex.1966); and *Bowman v. Simpson*, 546 S.W.2d 99 (Tex.Civ.App.—Beaumont 1977, writ ref'd).

Article XVI, Section 15 of the Texas Constitution, as amended in 1948, authorizes a husband and wife by written agreement, without prejudice to pre-existing creditors, to partition between themselves in severalty or into equal undivided interests all or any part of their existing community property.[3] This amendment, which was de-

---

**3.** Article XVI, Section 15 was amended November 4, 1980, to authorize a husband and wife to partition between themselves all or part of their property then existing OR TO BE ACQUIRED and to agree between themselves that the income or property for all or part of the

clared self-operative, permits the legislature to prescribe the form and manner of execution of such instruments, to provide for their recordation, and to impose other reasonable requirements. Article 4624a originally prescribed the statutory partition requirements. However, in 1973 this statute was replaced with Section 5.42 of the Family Code which provides in part:

(a) At any time, the spouses may partition between themselves, in severalty or in equal undivided interests, all or any part of their community property.... A partition or exchange must be in writing and subscribed by both parties.

(b) Subject to the rules stated in Subsections (c) and (d)[4] of this section, property or a property interest transferred to a spouse under a partition or exchange becomes his or her separate property.

Although there are some procedural differences between Section 5.42 and Article 4624a, which were considered by this Court in *Hilley* and *McKnight*, it is clear both statutes mandate a written partition between the spouses. Therefore, the holdings in these cases that a statute must be framed in terms of partition before it will be effective to accomplish a partition as authorized by the Constitution are valid and controlling.

It is urged by Jack that Article 852a, Section 6.09 is framed in terms of a partition and, therefore, is effective to accomplish such a partition. This section which is a part of the Texas Savings and Loan Act was enacted in 1963 and provides:

A husband and wife shall have full power to enter into a savings contract involving a savings account consisting of funds which are community property of their marriage so as to create a joint tenancy with right of survivorship as to such account and any future additions or dividends made or credited thereto and, to the extent necessary to accomplish such result in law, such contract shall constitute a partition of such community property or reciprocal gifts from the respective spouses, if the same is in writing and subscribed to by such husband and wife even though not acknowledged by either of them.

Although there have been no prior reported cases which have construed the effect of this section, some writers have reasoned that it is sufficient to accomplish a partition of community property and the creation of a joint tenancy as a one-step transaction. *See*: Simpkins, Texas Family Law § 22.17 (Speer's 5th ed. 1976); Duncan, Community Property and the Right of Survivorship, XVIII Baylor L.Rev. 501 (1966); *Contra*; Virden, Joint Tenancy Savings Accounts Funded with Community Property, 33 Tex. B.J. 1029 (1970).

Although one of the three joint accounts involved in *McKnight* was a savings account, the effect of Article 852a, Section 6.09 was not specifically discussed. However, all three of the accounts contained an agreement purporting to create a joint tenancy with right of survivorship. Section 46 of the Probate Code at that time included a provision authorizing the husband and wife by written agreement to create a joint account out of their community property with rights of survivorship. Therefore, it would appear that the following analysis by the Court in *McKnight* is applicable here.

Section 46 does not speak of partition. Moreover, it is a very old principle of law that the husband and wife cannot, by mere agreement, partition and transfer their community property to each other and effect a change of the class of the estate which the constitution fixes upon the property. *Green v. Ferguson,* 62 Tex. 525, 529 (1884); *Cox v. Miller,* 54 Tex. 16 (1880); *Pevehouse v. Lubbock National Bank,* 79 S.W.2d 1107 (Tex.Civ.App.1935, no writ). Neither Section 46 nor the agreements between Mr. and Mrs. McKnight mention a partition, but Mrs. McKnight urges that it was implicit in

---

separate property then owned by one of them, or WHICH MIGHT THEREAFTER BE ACQUIRED, shall be the separate property of that spouse.

4.   Subsection (c) or (d) is not applicable here.

both the statute and the agreements. This contention is necessary in order to arrive at the separate property which alone may be the subject of an agreement for a joint tenancy with right of survivorship between husband and wife. This same contention was urged in *Hilley* and we rejected it as a fictional partition of community property into separate property. When the Constitution authorized a marital partition of property, it did not contemplate that fictions, presumptions, nor even legislative declarations of intention would undo constitutionally defined community properties. *Arnold v. Leonard*, 114 Tex. 535, 273 S.W. 799 (1925). Mr. and Mrs. McKnight could not make an effective agreement concerning their community funds until they first reduced those funds to their separate estates. Unless we indulge in the fictions denounced in *Hilley*, it is clear that they did not deal with their separate estates in the instant case.

Section 6.09 provides that the contract shall constitute a partition; however, it is clear that this is a fictional partition similar to that disapproved by this Court in *Hilley* and *McKnight*. The agreement executed by the parties makes no specific reference to a partition. The obvious intent of the spouses is to provide a right of survivorship after the death of one of the spouses. This is illustrated by the testimony of Frank[5] that he and Ruth made the following agreement at the time the savings account was opened: "If she lived longer than I did, the money was hers. If I lived longer than her, it was mine. It was who lived the longest without even going to any court or anything or having any lawsuit." Thus, as was found in *Hilley* and *McKnight*, Frank and Ruth did not intend a gift to each other, but rather they intended to bargain for the full title on the death of the first to die.

A right of survivorship serves a very useful purpose.[6] However, if a mere deposit of community funds in a joint account should accomplish a partition, problems could arise. Would real estate purchased by one spouse from funds in the account be separate property? Clearly, that would not be the intent of the spouses in opening a joint account. Would the withdrawal of all of the funds by one party before the other party's death render those funds the separate property of the withdrawing spouse? This would be contrary to the intent of a partition, but is fully authorized under the signatory agreement. It is obvious from the language of the contract that its purpose, insofar as the savings institution is concerned, is to afford it full protection by permitting either signatory person absolute control over all such funds—both before and after the dissolution of the marriage.

We conclude that mere execution of the signature agreement providing for a joint tenancy with right of survivorship as authorized by Section 6.09 does not accomplish a one-step partition of community funds and creation of a joint tenancy within the permissible boundaries authorized by Article XVI, Section 15 of the Texas Constitution. Rather, a partition of community funds must be accomplished by the spouses before creation of the joint tenancy with right of survivorship. The lower courts properly held that one-half of the funds on deposit in the savings account passed to Ruth Cochran Maples' estate on her death.

The judgment of the court of civil appeals is affirmed.

WALLACE, J., notes his dissent.

---

5. Frank testified by deposition prior to his death.

6. It offers a means for the husband and wife to pool their resources and keep them in a flexible state for use during marriage and at the same time providing for the unfettered passage of title of the whole to the survivor. *See Hilley v. Hilley, supra,* dissenting opinion at p. 572.