IN THE SUPREME 
COURT OF TEXAS
════════════
No. 07-0784
════════════
Harry Holmes, II, 
Independent Executor of the Estate of Thomas J. Holmes, Sr., Deceased and as 
Trustee of Any Trust Named as a Legatee in the Will of Thomas J. Holmes, Sr., 
Deceased, Petitioners,
v.
Douglas G. Beatty, 
Independent Executor of the Estate of Kathryn V. Holmes, Deceased, 
Respondent
════════════════════════════════════════════════════
On 
Petition for Review from the
Court of Appeals for the Fourteenth District of 
Texas
════════════════════════════════════════════════════
- 
consolidated with -
════════════
No. 07-0785
════════════
Harry Holmes, II, 
Independent Executor of the Estate of Thomas J. Holmes, Sr., Deceased and as 
Trustee of Any Trust Named as a Legatee in the Will of Thomas J. Holmes, Sr., 
Deceased, Petitioners,
v.
Douglas G. Beatty, 
Independent Executor of the Estate of Kathryn V. Holmes, Deceased, 
Respondent
════════════════════════════════════════════════════
On 
Petition for Review from the
Court of Appeals for the Fourteenth District of 
Texas
════════════════════════════════════════════════════
 
Argued December 5, 
2008
 
 
            
Chief Justice Jefferson 
delivered the opinion of the Court.
            
After decades of debate in the bench, bar, and the Legislature about the 
ability of spouses to obtain rights of survivorship in community property, Texas 
citizens changed the constitution to confirm that right. The 1987 amendment 
provides that “spouses may agree in writing that all or part of their community 
property becomes the property of the surviving spouse on the death of a spouse.” 
Tex. Const. art. XVI, 
§ 15. Two years later, the Legislature enacted Probate Code sections 451 
through 462 to address the formalities necessary to the 
create a survivorship arrangement. See Tex. Prob. Code §§ 451-62. Today we are asked 
to determine how these sections operate with respect to rights of survivorship 
in certain brokerage accounts and securities certificates issued from those 
accounts. We conclude that the account agreements and certificates at issue here 
created rights of survivorship. Accordingly, we reverse and render in part and 
affirm in part the court of appeals’ judgment.
I
Factual and Procedural Background
            
Thomas and Kathryn Holmes married in 1972. During their marriage, Thomas 
and Kathryn amassed over ten million dollars in brokerage accounts and acquired 
securities certificates issued from those accounts. Kathryn died in 1999. Her 
will appointed Douglas Beatty, her son from a previous marriage, as the 
independent executor of her estate. Thomas died approximately nine months later. 
His son, Harry Holmes II (“Holmes”), also from a previous marriage, was 
appointed independent executor of his estate. The accounts and certificates were 
variously listed as “JT TEN”; “JT TEN defined as ‘joint tenants with 
right of survivorship and not as tenants in common’”; “JTWROS”; and “Joint 
(WROS).” If those acronyms and definitions establish a right of survivorship, 
then Thomas acquired 100% upon Kathryn’s death, and upon his death, the holdings 
would have passed under his will, which left nothing to Kathryn’s children. If 
those designations were insufficient to create survivorship interests then, as 
community property, only 50% would have passed to Thomas, with the remaining 50% 
of the accounts and certificates passing under Kathryn’s will, which left 
nothing to Thomas’s children.
            
Beatty sought a declaration that all of the assets were community 
property; Holmes countered that the assets passed to Thomas through 
survivorship, and then to Thomas’s beneficiaries following his death. On 
competing motions for summary judgment, the trial court concluded that some of 
the assets were held jointly with survivorship rights and others were community 
property. In two opinions, the court of appeals affirmed in part, reversed and 
rendered in part, and remanded for further proceedings. 233 
S.W.3d 475, 494; 233 S.W.3d 494, 522-23. Holmes and Beatty petitioned 
this Court for review, which we granted. 52 Tex. Sup. 
Ct. J. 149 (Dec. 4, 2008). Because these two appeals involve “substantially 
similar facts, arguments, and briefing,” we have consolidated them into a single 
opinion and judgment. Hubenak v. San Jacinto Gas 
Transmission Co., 141 S.W.3d 172, 179 (Tex. 2004).
II
Development of Rights of Survivorship in Community Property in 
Texas
A
The Hilley Era
            
Texas has not always allowed spouses to create rights of survivorship in 
community property. In Hilley v. Hilley, 342 S.W.2d 565, 568 (Tex. 1961), we held that it 
was unconstitutional for spouses to hold community property with rights of 
survivorship. The dispute in Hilley 
concerned whether stock purchased with community funds and “issued in the 
names of the husband and wife ‘as joint tenants with rights of survivorship and 
not as tenants in common’” actually conferred rights of survivorship. Id. at 566. We reasoned that because this property was 
acquired during marriage with community funds and thus “by definition became 
community property,” it was required to pass either under the decedent’s will or 
under the intestacy statutes, absent a written agreement signed by the spouses 
partitioning the stock from their community property, thereby making it separate 
property. Id. at 568. We noted that to hold 
otherwise would directly contravene the constitution’s community property 
provision. Id. (citing Tex. Const. art. XVI, § 15; Act of May 
12, 1949, 51st Leg., R.S., ch. 242, § 1, 1949 Tex. 
Gen. Laws 450, 450, repealed by, Act of June 2, 1969, 61st Leg., R.S., 
ch. 888, § 6, 1969 Tex. Gen. Laws 2707, 2733 (former 
Tex. Rev. Civ. 
Stat. art. 4610 )).
            
After Hilley, the Legislature amended 
the Probate Code in an attempt to recognize survivorship rights in community 
property. Act of April 27, 1961, 57th Leg., R.S., ch. 
120, § 1, 1961 Tex. Gen. Laws 233, amended by Act of May 22, 1969, 61st 
Leg., R.S., ch. 641, § 3, 1969 Tex. Gen. Laws 1922, 
1922 (“It is specifically provided that any husband and his wife may, by written 
agreement, create a joint estate out of their community property, with rights of 
survivorship.”). In Williams v. McKnight, 402 S.W.2d 505, 508 (Tex. 
1966), we considered the amendment’s constitutionality. Citing Hilley, we held that any statutory attempt to grant 
survivorship rights in community property would be unconstitutional. Id. 
(“Constitutional limitations are as binding upon the Legislature as they are 
upon the Judiciary.”). We reaffirmed that the only way for a couple to create 
survivorship rights was to partition their community property into separate 
property, then execute survivorship agreements for that separate property. Id. at 508. This process came to be known among 
practitioners as the “Texas Two-Step.” See, e.g., Robert N. Virden, 
Joint Tenancy with Right of Survivorship & Community Property with Right 
of Survivorship, 53 Tex. B.J. 1179, 1179 
(1990). Subsequent decisions echoed this result. See, 
e.g., Allard v. Frech, 754 S.W.2d 111, 115 
(Tex. 1988) (“This holding is based on a firmly rooted principle of community 
property law which requires the actual partition of community property before a 
valid joint tenancy with the right of survivorship can be created.”); Maples 
v. Nimitz, 615 S.W.2d 690, 695 (Tex. 1981) 
(same).
B
The 1987 Constitutional Amendment and Subsequent 
Legislation
            
In 1987, the Legislature passed, and the Texas voters approved, a 
constitutional amendment authorizing rights of survivorship in community 
property. Tex. S.J. Res. 35, 70th Leg., R.S., 1987 Tex. Gen. Laws 4114, 4114-15. 
The amendment provided that “spouses may agree in writing that all or part of 
their community property becomes the property of the surviving spouse on the 
death of a spouse.” Tex. Const. art. 
XVI, § 15. Two years later, the Legislature passed 
Senate Bill 1643, which added Part 3 to Chapter XI of the Probate Code 
concerning non-testamentary transfers. Act of May 26, 1989, 71st Leg., R.S., Ch. 
655, § 2, 1989 Tex. Gen. Laws 2159, 2159-63. This new section governs “[a]greements between spouses regarding rights of survivorship 
in community property.” Tex. Prob. Code § 
46(b).
            
Probate Code sections 451 and 452 are at issue in this case. Section 451 
states: “At any time, spouses may agree between themselves that all or part of 
their community property, then existing or to be acquired, becomes the property 
of the surviving spouse on the death of a spouse.” Id. 
§ 451. Section 452 lays out these requirements:
 
An 
agreement between spouses creating a right of survivorship in community property 
must be in writing and signed by both spouses. If an agreement in writing is 
signed by both spouses, the agreement shall be sufficient to create a right of 
survivorship in the community property described in the agreement if it includes 
any of the following phrases:
 
(1)        
“with right of survivorship”;
(2)        
“will become the property of the survivor”;
(3)        
“will vest in and belong to the surviving 
spouse”; or
(4)        
“shall pass to the surviving spouse.”
 
An 
agreement that otherwise meets the requirements of this part, however, shall be 
effective without including any of those phrases.
 
Id. § 452. The Legislature stated that these 
agreements do not change the nature of community property: “Property subject to 
an agreement between spouses creating a right of survivorship in community 
property remains community property during the marriage of the spouses.” Id. § 453.
            
With this constitutional amendment and legislation, the Legislature hoped 
to finally resolve the battle over survivorship rights in community property. 
The proponents[1] urged that these sorts of agreements were 
common in other states and simplified the transfer of certain assets to 
surviving spouses. See Gerry W. 
Beyer, 10 Texas Practice Series: Texas Law of Wills § 60.1 (3d ed. 2002). 
As Professor Beyer noted, a community property survivorship agreement “is a 
simple, convenient and inexpensive method for many married people to achieve an 
at-death distribution of their community property that is in accord with their 
intent.” Id. § 60.9.
            
As the amendment’s drafters noted at the time, “[m]any Texas spouses hold 
a substantial amount of assets in a form that is ineffective to achieve their 
desired purpose.” Senate Judiciary Comm., Resolution Analysis, 
Tex. S.J. Res. 35, 70th Leg., R.S. (1987). Supporters argued that the 
proposed constitutional amendment would “eliminate a trap for the unwary married 
couple who would execute a signature card provided by a financial institution 
and believe, mistakenly, that they have created an effective joint tenancy with 
right of survivorship in relation to their community property.” Texas Legislative Council, 
Analyses of Proposed Constitutional Amendments and Referenda, 
Info. Report, No. 
87-2 at 36 (Sept. 1987).
            
The purpose of the amendment and accompanying legislation, then, was to 
provide “[a] simple means . . . by which both spouses by a written instrument 
can provide that the survivor of them may be entitled to all or any designated 
portion of their community property without the necessity of making a will for 
that purpose.” Senate Judiciary Comm., Resolution Analysis, 
Tex. S.J. Res. 35, 70th Leg., R.S. (1987). As the committee observed, 
“many banks and savings and loans associations have often failed to provide 
forms by which their customers can create effective joint tenancies out of 
community property.” Id. The amendment addressed these concerns by 
removing the constitutional hurdles to creating rights of survivorship in 
community property.
III
Application
            
The assets at issue in this case fall into two categories: (1) securities 
accounts and (2) securities certificates issued from those accounts. These two 
categories of assets are affected by distinct legal analyses, so we address each 
in turn.
A
The Securities Accounts
            
Thomas and Kathryn Holmes maintained investment accounts with multiple 
financial institutions. Each of them was governed by an account agreement that 
dictated terms, such as who could manage the accounts and whether the accounts 
were held with rights of survivorship.
1
Accounts Agreements With a “JT TEN” 
Designation
            
At the time of Kathryn’s death, the Holmeses 
held two investment accounts whose agreements included the designation “JT TEN”: 
one with Dain Rauscher, Inc. 
and another with First Southwest Company. Thomas and Kathryn opened the Dain Rauscher account in 1994. The 
account agreement, titled “JOINT ACCOUNT AGREEMENT” was styled “THOMAS J. HOLMES 
AND KATHRYN V. HOLMES, JT TEN.” The agreement gave the account holders an option 
to strike through “paragraph (a) or (b) whichever is inapplicable.” Paragraph 
(a) stated “it is the express intention of the undersigned to create an estate 
or account as joint tenants with rights of survivorship and not as tenants in 
common.” Paragraph (b) gave the account holders the option to designate who 
would receive the interest in the account upon their death and the percentages 
each recipient would receive. The Holmeses struck 
neither provision. They both signed the agreement, and “Jt. Ten” appeared next to Kathryn’s name on the signature 
line.
            
The Holmeses opened the First Southwest Account 
in 1997. The account agreement listed their names as “THOMAS J. HOLMES, KATHRYN 
V. HOLMES JT TEN.” The agreement did not define “JT TEN” and did not include any 
further discussion of survivorship rights. Both Thomas and Kathryn signed the 
First Southwest account, as well.
            
The court of appeals held that neither of these agreements “clearly reflect[ed] intent to own the account with a right of 
survivorship.” 233 S.W.3d 475, 481; see also 233 S.W.3d 494, 505. As to 
the Dain Rauscher account, 
the court noted that because the couple did not strike through paragraph (a) or 
(b), the agreement “did not affirmatively reflect any intent to effect a non-testamentary transfer—through a right of 
survivorship or otherwise.” 233 S.W.3d 475, 481. The 
court also rejected Holmes’s argument that the “JT TEN” designation on the 
agreements satisfied section 452's requirements: the “mere inclusion of ‘JT TEN’ 
next to Kathryn’s and Thomas’s names in the account title did not sufficiently 
convey intent to create a right of survivorship.” Id. 
at 483. The court agreed with Beatty’s argument that “parties may own 
property as joint tenants without being subject to a right of survivorship.” 
Id.; 233 S.W.3d 494, 505.
            
We disagree with the court of appeals on each point. A joint tenancy 
carries rights of survivorship. See, e.g., U.S. v. Craft, 535 U.S. 
274, 280 (2002) (“The main difference between a joint tenancy and a tenancy in 
common is that a joint tenant also has a right of automatic inheritance known as 
‘survivorship.’ Upon the death of one joint tenant, that tenant’s share in the 
property does not pass through will or the rules of intestate succession; 
rather, the remaining tenant or tenants automatically inherit it.”); 2 William 
Blackstone, Commentaries on the Laws of 
England 183 (3rd ed. 1768) (“[The] remaining grand incident of joint 
estates [is] the doctrine of survivorship . . . .”); Littleton’s Tenures, Book III, ch. III, § 280 (Eugene W. Wambaugh 
ed., 1903) (“And it is to be understood, that the nature of joint-tenancy is, 
that he which surviveth shall have only the entire 
tenancy according to such estate as he hath . . . .”); 7 Richard R. Powell, Powell on Real Property 
§ 51.03[3] (Michael Allan Wolf ed., 2000) (“Survivorship is central to a 
joint tenancy.”). Contrary to Beatty’s and the court of appeals’ assertion then, 
a joint tenancy cannot be held without rights of survivorship; such a joint 
agreement would be a tenancy in common. See Craft, 535 U.S. at 
280; 7 Powell on Real Property § 
51.01[1] (“[A joint tenancy] is distinguished from a tenancy in common 
principally by the right of survivorship.”). The financial industry’s use of 
“joint tenancy” is also consistent with this view. See, 
e.g., Sec. Transfer Assoc., 
Guidelines of the Securities Transfer Association AV-1 (Oct. 2005) 
(defining “Joint Tenancy” as a “[f]orm of ownership 
where two or more individuals hold shares as joint tenants with right of 
survivorship. When one tenant dies, the entire tenancy remains to the 
surviving tenants. JOHN BROWN & MARY BROWN JT 
TEN.”).
            
Citing Stauffer v. Henderson, 801 S.W.2d 858, 865 (Tex. 1990), the 
court of appeals held that it could not consider information that is not 
explicitly referenced in the agreement itself. 233 S.W.3d 494, 
507. It therefore evaluated the designations “JT TEN” and “Jt. Ten” without reference to guidelines, codes, or custom. 
Id. at 509-13. In Stauffer, we held that 
under Probate Code section 439(a), concerning survivorship rights between 
non-spouses, parties could only establish survivorship using the statute’s 
language (or language “substantially” similar to it), and a court could not 
consider other evidence to ascertain the parties’ intent. Stauffer, 801 
S.W.2d at 863-65 (citing Tex. Prob. Code § 
439(a)). Applying this holding to the current case, the 
court of appeals stated:
 
[W]e are 
addressing a situation in which Texas law dictates parties do not even have a 
certain type of agreement—a survivorship agreement—unless they have executed a 
written instrument complying with statutory formalities, including expression of 
their intent to create a right of survivorship. Therefore, if we must look 
outside the written instrument to determine that a term used therein means 
“right of survivorship,” the parties have not expressed their intent within the 
written instrument.
 
233 S.W.3d 494, 511.
            
The court of appeals’ reliance on Stauffer, however, was 
misplaced. Section 439(a) requires that a survivorship agreement between 
non-spouses use either the statute’s language or a substitute that is “in 
substantially the [same] form.” Tex. 
Prob. Code § 
439(a). Section 452 is less restrictive, presumably because 
agreements between spouses are less vulnerable to fraud. The constitutional 
amendment permitting survivorship agreements in community property was intended 
to facilitate the creation of such agreements, see, e.g., Senate 
Judiciary Comm., Resolution Analysis, Tex. S.J. Res. 35, 70th Leg., R.S. (1987), 
and the Legislature’s use of less confining language comports with that goal. 
Moreover, Stauffer precludes outside evidence, not reference to the 
common law or trade usage. Cf. Restatement (Second) of Contracts § 
222 cmt. b (“There is 
no requirement that an agreement be ambiguous before evidence of a usage of 
trade can be shown . . . .”).
            
Precedent, trade usage, and seminal treatises make clear that joint 
tenancies carry rights of survivorship, and the Holmeses’ agreement included this designation. This does not 
fully answer, however, the inherent tension in owning community property as 
“joint tenants.” Professor Reed Quilliam noted in an 
article published shortly after the constitutional amendment and statutes were 
adopted that “[j]oint tenancy is a form of separate 
property ownership and is wholly incompatible with community property concepts.” 
See W. Reed Quilliam, Jr., A Requiem for 
Hilley: Is Survivorship Community Property a 
Solution Worse than the Problem?, 21 Tex. Tech L. Rev. 1153, 1167 (1990). In the same 
discussion, though, Professor Quilliam predicted that 
situations like this case were likely to arise:
 
            
It is likely that misconceptions about the new form of property ownership 
will result in instances of spouses agreeing to hold community property “as 
joint tenants with right of survivorship” rather than merely “with right of 
survivorship.” What will be the effect of such designation?
            
Manifestly the property will remain community, although the spouses’ 
agreement to hold with right of survivorship should be given effect to impress 
this characteristic on it. The property cannot be joint tenancy 
property, a form of separate property ownership, unless it has first been 
rendered separate by partition. The agreement of the spouse violates the 
constitution insofar as it seeks to establish a joint tenancy in community 
property. But the agreement to hold such property with right of survivorship is 
now constitutionally sanctioned.
 
Id. at 1168-69 (emphasis in original). We agree with 
Professor Quilliam. A “joint tenancy” or “JT TEN” 
designation on an account is sufficient to create rights of survivorship in 
community property under section 452. The Dain Rauscher and First Southwest accounts included this 
designation, and we “give effect to the written expression of the parties’ 
intent.” Balandran v. Safeco Ins. 
Co. of Am., 972 S.W.2d 738, 741 (Tex. 1998). Because the “JT TEN” 
designation was sufficient to indicate the Holmeses’ 
intent to hold those accounts with rights of survivorship, we reverse the court 
of appeals’ judgment on the Dain Rauscher and First Southwest accounts.
2
The Raymond James Account
            
The Holmeses opened an investment account with 
Raymond James & Associates in 1995. The “New Account Form” gave Thomas and 
Kathryn the option to check a box for the “Account Classification.” They chose 
“Joint (WROS).” The form also listed their names as “THOMAS J. HOLMES & 
KATHRYN V. HOLMES JTWROS.” The trial court held that this account did not carry 
rights of survivorship, but the court of appeals reversed, holding “the Raymond 
James account agreement sufficiently conveyed Kathryn’s and Thomas’s intent to 
create a right of survivorship.” 233 S.W.3d 494, 
515.
            
The court of appeals reached this decision primarily based on the Holmeses’ affirmative act of checking the “Joint (WROS)” 
box:
 
Kathryn 
and Thomas affirmatively selected an “Account Classification.” They were 
presented with fourteen options for the account classification and selected 
“Joint (WROS)” to the exclusion of all other options. Significantly, Kathryn and 
Thomas rejected “tenancy in common”—the very designation that Beatty attempts to 
assign to this account. We can conceive of no other meaning Kathryn and Thomas 
could have contemplated for “Joint (WROS),” considering that none of the other 
options can possibly be construed as meaning joint tenancy with rights of 
survivorship.
 
Id. at 515.
            
We agree with the court of appeals that “Joint (WROS)” means “joint 
tenancy with rights of survivorship.” As such, this indicated the Holmeses’ intent to obtain rights of survivorship in this 
account. This designation, along with Thomas’s and Kathryn’s 
signatures on the form, satisfy section 452's requirements. We therefore 
affirm the court of appeals’ judgment on the Raymond James account.
B
The Securities Certificates
            
Securities issued in certificate form represent the other category of 
assets in dispute. Kathryn and Thomas opened accounts with several brokerage 
companies during their marriage, investing in a combination of stocks and bonds. 
Over time, the respective brokerage companies distributed some of these 
individual securities, in certificate form, to the Holmeses. The certificates themselves had various 
designations, such as “JT TEN”; “JT TEN-as joint tenants with right of 
survivorship and not as tenants in common”; and “JT WROS.”
            
None of the certificates were signed by Kathryn or Thomas. As the court 
of appeals pointed out, it would have been unusual for them to do so. 233 S.W.3d 
475, 484 (“None of the certificates at issue were signed by Kathryn or Thomas 
because owners do not typically sign stocks or bonds until they are ready to 
sell or redeem them.”). Beatty contends that these individual certificates must 
satisfy the requirements of section 452 on their own, and because they were 
unsigned, they fail to do so. Holmes posits two alternative theories for 
establishing rights of survivorship in the certificates: (1) the survivorship 
language on the certificates is valid under section 450 of the Probate Code, and 
alternatively, (2) the survivorship language in the underlying account 
agreements govern the securities themselves. The court 
of appeals disagreed with Holmes on both theories and held that none of the 
certificates were held with rights of survivorship. 233 S.W.3d 
475, 483; 233 S.W.3d 494, 522. We agree that section 450 is inapplicable 
to these assets, but we disagree with the court of appeals on Holmes’s second 
argument. Because we hold that the agreements’ survivorship language conferred 
survivorship rights in the certificates until the Holmeses disposed of them, the certificates passed to Thomas 
pursuant to those rights.
1
Texas Probate Code Section 450
            
Texas Probate Code section 450 falls under Part 2 of the chapter dealing 
with nontestamentary transfers. Tex. Prob. Code § 450. Section 450 states, in 
relevant part:
 
(a)        Any 
of the following provisions in [a] . . . bond, [or] . . . securities . . . is 
deemed to be nontestamentary, and this code does not 
invalidate the instrument or any provision:
(1)        that 
money or other benefits theretofore due to, controlled, or owned by a decedent 
shall be paid after his death to a person designated by the decedent in either 
the instrument or a separate writing, including a will, executed at the same 
time as the instrument or subsequently . . . .
 
Id. 
Holmes argues that this language controls the securities certificates, and that 
the various designations found on the certificates (e.g. “JT TEN”) establish 
rights of survivorship in those assets, and that section 452's requirements 
cannot “invalidate” this agreement. The court of appeals disagreed, holding that 
Part 3 of Chapter XI controlled, and Holmes, therefore, could not rely on 
section 450 to establish rights of survivorship in the certificates. 233 S.W.3d 475, 490. We agree with the court of appeals.
            
Probate Code section 46(b) states that “[a]greements between spouses regarding rights of survivorship 
in community property are governed by Part 3 of Chapter XI of this code.” Tex. Prob. Code § 46(b). The court of appeals 
correctly noted that this provision makes it clear that “section 450 
irreconcilably conflicts with Part 3.” 233 S.W.3d 475, 
489. To hold otherwise would allow parties to circumvent section 452's 
writing and signature requirements. By enacting section 46(b) at the same time 
as sections 451 through 462 (Chapter XI, Part 3 of the Probate Code), the 
Legislature provided that Part 3 is the exclusive means to establish rights of 
survivorship in community property.
2
Texas Probate Code Section 455
            
Holmes also argues that the certificates issued from the Holmeses’ investment accounts retained the survivorship 
rights established by their respective account agreements pursuant to section 
455. Section 455 falls within the Probate Code’s discussion of 
survivorship rights in community property. Tex. Prob. Code § 455. Section 455, titled 
“Revocation,” states:
 
An 
agreement between spouses made in accordance with this part of this code may be 
revoked in accordance with the terms of the agreement. If the agreement does not 
provide a method for revocation, the agreement may be revoked by a written 
instrument signed by both spouses or by a written instrument signed by one 
spouse and delivered to the other spouse. The agreement may be revoked with 
respect to specific property subject to the agreement by the disposition of such 
property by one or both of the spouses if such disposition is not inconsistent 
with specific terms of the agreement and applicable law.
 
Id. 
Holmes argues that because Thomas and Kathryn never executed a revocation 
agreement pursuant to this section, and because the certificates were never 
disposed of, the account agreements govern the certificates. Beatty argues that 
the act of alienating the certificates from the accounts acted as a 
“disposition.” We disagree.
            
Once the survivorship agreement was in place, the only means of revoking 
it was pursuant to the statute, i.e., through a subsequent written agreement or 
a disposition of the assets covered by the agreement. Section 455 does not 
define what constitutes a “disposition.” Therefore, we give it its “ordinary 
meaning.” Tex. Gov’t 
Code § 312.002. Black’s 
Law Dictionary defines “disposition” as “[t]he act of transferring something to 
another’s care or possession, esp. by deed or will; the relinquishing of 
property.” Black’s Law Dictionary 
505 (8th ed. 2004). Webster’s defines “disposition” as “a giving over to 
the care or possession of another, or a relinquishing.” Webster’s Third New Int’l 
Dictionary 654 
(2002).
            
The issuance of securities in certificate form is not a “disposition” 
under the statute. The certificates were issued in the Holmeses’ names, so ownership never changed; there was no 
“relinquishment” of the assets. As the court of appeals observed, “Kathryn and 
Thomas may have intended to own the securities in certificate form with a right 
of survivorship because they received the same property they had purchased 
through the accounts—just in a different form.” 233 S.W.3d 
494, 519. We agree that this was likely the Holmeses’ expectation, especially because survivorship 
designations appeared on each of the certificates themselves, among them “JT 
WROS,” “JT TEN,” and “JT TEN - as joint tenancy with right of survivorship and 
not as tenancy in common.”
            
 Because we hold that issuing these certificates did not revoke the 
accounts’ survivorship agreements, the certificates retained survivorship 
rights. We held above that the Dain Rauscher, First Southwest, and Raymond James accounts were 
held with rights of survivorship, so the certificates that were issued from 
those accounts carried the rights of survivorship established by those accounts’ 
agreements. We therefore reverse the court of appeals judgment as to those 
certificates.
            
At the time of Kathryn’s death, the Holmeses 
also held securities in certificate form issued from accounts once held with 
Kemper Securities and Principal/Eppler, Guerin & 
Turner.[2] We must determine, then, whether the 
Kemper Securities and Principal account agreements established rights of 
survivorship. The Kemper account agreement was titled “JOINT ACCOUNT WITH RIGHT 
OF SURVIVORSHIP” and was signed by both spouses. This meets the test we 
established above to create rights of survivorship in an investment account. The 
agreement for the account held with Principal/Eppler, 
Guerin & Turner listed the Holmeses’ names as 
“Thomas J. Holmes & Kathryn V. Holmes JTWROS” and was signed by both. This agreement, too, established rights of survivorship in the 
account. Because both of these accounts were held with rights of 
survivorship, so too were the certificates issued from those accounts. 
Accordingly, we reverse the court of appeals’ judgment as to these 
securities.
IV
Conclusion
            
The 1987 constitutional amendment and accompanying legislation sought to 
facilitate the creation of rights of survivorship in community property and 
eliminate the constitutional hurdles spouses faced when attempting to establish 
such rights. The Holmeses’ account agreements clearly 
indicated their intent to create rights of survivorship in those accounts. The 
rights were not lost when the Holmeses later obtained 
some of their investments in certificate form. Pursuant to these survivorship 
agreements, each of the accounts and certificates at issue in this case passed 
to Thomas upon his wife’s death, and then by will to Thomas’s beneficiaries when 
he died. If the Holmeses had wished an alternate 
devise, they could have made appropriate provisions in their respective wills. 
As they did not, we reverse and render in part and affirm in part the court of 
appeals’ judgment. Tex. R. App. P. 60.2(a), 
(c).
 
 
______________________________
Wallace B. Jefferson
Chief Justice
 
OPINION 
DELIVERED:  June 26, 2009






[1] The primary 
sponsor for the amendment and legislation was the Family Law Section of the 
State Bar of Texas. See Gerry W. 
Beyer, 10 Texas Practice Series: 
Texas Law of Wills § 60.1 (3d ed. 2002).

[2] These accounts 
were no longer active at the time of Kathryn’s death, but this does not affect 
our analysis. The account agreements continued to act as an expression of the 
Holmeses’ intent as it related to the 
certificates.