Murry B. COHEN, Relator,

v.

Jack RAINS, Secretary of State, George Strake, Chairman, Texas Republican Executive Committee, et al., Respondents.

No. B14–88–065–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 11, 1988.

See also, 743 S.W.2d 366.

Stanley G. Schneider, W. Troy McKinney, Houston, for relator.

Jim Scott, Jr., Sugar Land, for respondents.

Before JUNELL, CANNON and DRAUGHN, JJ.

OPINION

PER CURIAM.

Relator, Murry B. Cohen, has petitioned this court for a writ of mandamus directing the Secretary of State, Jack Rains; the

Chairman of the Texas Republican Executive Committee, George Strake; and the Republican Party County Chairmen of the Executive Committees and Primary Committees (if existent) for the fourteen counties comprising the First Court of Appeals District, to exclude the name of Jim Scott from the 1988 Republican General Primary Election Ballot for the position of Justice for the First Court of Appeals District, Place Four. Relator, who is the incumbent and sole Democratic primary candidate for that office, alleges that Scott's application for a place on the ballot is void on its face, because the petition in lieu of filing fee which accompanies it does not contain 750 signatures of registered voters as required by Tex.Elec.Code Ann. § 172.021(e) (Vernon Supp.1988).

The operative facts are undisputed. Jim Scott filed his application for a place on the Republican Primary Election Ballot for the concerned office on January 4, 1988. Accompanying his application was a petition in lieu of filing fee, on forms issued by the Secretary of State. This petition, in multiple parts, contained 1,071 signatures of persons purportedly eligible to vote in the election. Respondent Strake, as Chairman of the Texas Republican Party Executive Committee, and in accordance with Tex. Elec.Code Ann. § 172.028 (Vernon 1986 & Supp.1988), certified Scott's name to be placed on the ballot as a candidate in the 1988 Republican Primary Election. Relator demanded that Respondent Strake reject Scott's application, alleging that the application did not comply with statutory requirements as to form, content, and procedure. Specifically, Relator asserted that the petition failed to comply with Tex.Elec. Code Ann. §§ 172.021(e) and 172.025 (Vernon Supp.1988). The Election Code requires the signatures of 750 registered voters from a candidate, such as Scott, who elects to run for the concerned office without paying the filing fee. Respondent Strake refused Cohen's demand. This application for writ of mandamus followed.

The thrust of Relator's challenge to Scott's petition is that at least 421 of the signatures contained thereon are duplicates, and when these duplicate signatures are subtracted from the total, only 650 valid signatures remain. Respondent Strake and real-party-in-interest Scott do not contest the existence of these duplicate signatures. However, Scott contends that, under the relevant provisions of the Texas Election Code, it is proper for eligible voters to sign twice, because two separate petition forms issued by the Secretary of State are involved. Further, Respondent Strake and Scott argue that regardless of the duplicate-signature issue, Relator Cohen lacks standing to seek mandamus relief in this case, and that, in any event, mandamus does not lie against Strake under the circumstances before this Court.

■ In analyzing the argument that Relator Cohen has no standing to seek mandamus in this case, we find it lacking in precedential support and having little to recommend it from a logical public policy standpoint. Respondent supports this issue by relying on the general rule that a voter who has no justiciable interest different from that of the general public cannot bring an action to enjoin the placing of the name of an ineligible candidate on the ballot. *Allen v. Fisher*, 118 Tex. 38, 9 S.W.2d 731 (1928). From this general rule, Respondents conclude that Relator, lacking even the status of a voter in the Republican primary, cannot contest by mandamus the failure of his Republican opponent to comply with the petition provisions of the Election Code. Without regard to a detailed analysis of the general rule as stated, we are unable to accept the strained inductive leap sought by Respondents that a candidate of one party has no justiciable interest in protecting himself from opposition by a candidate of another party who has not complied with the election qualification laws of this state. Nor do we find recent court decisions remotely supporting such a conclusion. While none of the prior cases precisely mirror the facts of this case, they are sufficiently analogous to be determinative of this issue. The Texas Supreme

Court held that a duly certified candidate for state representative had the capacity to sue for compliance by, and was entitled to a writ of mandamus against, his only opponent, since that opponent had not complied with the primary filing deadline set out in the Election Code. *Thiel v. Harris County Democratic Executive Committee,* 534 S.W.2d 891 (Tex.1976). The Amarillo Court of Appeals ruled that a candidate for county attorney had standing to sue the county Democratic chairman, to enjoin him from certifying and placing the name of an opposing candidate on the Democratic primary ballot, because the other candidate had violated the Election Code residence requirements for that office. *Lemons v. Wylie,* 563 S.W.2d 882 (Tex.Civ.App—Amarillo 1978, no writ). In granting the injunction in *Lemons,* the Amarillo court declined to extend the general rule set out in *Allen* to encompass opposing candidates. Instead, it held that a candidate has a special interest, separate and apart from that of the general public and voters, in not being opposed by an ineligible candidate. *Lemons,* 563 S.W.2d at 883. *See also Adkins v. Rawls,* 182 S.W.2d 509, 512 (Tex Civ.App.—Waco 1944, no writ); *Colvin v. Ellis County Republican Executive Committee,* 719 S.W.2d 265, 267 (Tex.App.—Waco 1986, no writ).

Respondent Strake contends that standing in such cases should be limited to those instances where a candidate of one party challenges the qualifications of another candidate within the same party. The flaw in this approach is that opposing candidates within the same party could enforce the Election Code requirements against each other, but not against opposition candidates in other parties. Such a remedial approach would be one-dimensional, and the courts have declined to so limit the enforcement of our election laws in this way. The net effect of such limited enforcement, if adopted, would place the party candidates above the law, except as to challenges from primary candidates within their own party. Candidates, such as Scott, who have no primary opponent would be largely immune from realistic challenges. Our courts mandate strict compliance with election laws, and political parties are not outside this mandate. *Wallace v. Howell,* 707 S.W.2d 876, 877 (Tex.1986); *Gilmore v. Waples,* 108 Tex. 167, 188 S.W. 1037 (1916). Respondent urges that it is for the Attorney General, or other state officials, to prosecute such violations. That is true. Other state officials do have responsibilities with regard to enforcement of our election code, but such legal responsibilities are not exclusive to the extent of foreclosing a candidate's access to mandamus and injunctive relief by the courts in appropriate cases. Otherwise, election-qualification violations may often be indirectly protected from effective enforcement due to the limited time periods between filing and primary deadlines. In short, we find that Relator has standing to bring this action.

■ The second question presented for our review involves the statutory basis on which Relator seeks to disqualify Jim Scott, the only candidate opposing him. He contends that Scott's petition does not contain the minimum number of signatures required by § 172.021(e) of the Texas Election Code. Relator contends that Scott, as a candidate for Justice of the First Court of Appeals who has elected not to pay a filing fee, must have the signatures of 750 individuals who are legally registered to vote in the election. He attaches certified copies of Scott's petition containing a total of 1,071 signatures, 421 of which are duplicates. When the duplicates are subtracted, the net total of valid signatures equals 650. This is less than the minimum which Cohen alleges is required by law. Scott, on the other hand, argues that duplicate signatures are permissible because there are two different sets of petition forms furnished by the Secretary of State for this office, and that an individual registered to vote in the election can sign either, or both, petitions. Alternatively, he argues that the Election Code requires only 500 signatures in lieu of a filing fee for the office he seeks. Consequently, we must determine

the minimum number of signatures required by the Election Code for candidates such as Scott, who seek elective judicial offices that involve Harris County, and who also elect not to pay the required filing fee. The election code provisions primarily involved are as follows:

"[a] candidate for an office specified by section 172.024(a)(8), (10), or (12), or for justice of the peace in a county with a population of more than 2,400,000, who chooses to pay the filing fee must also accompany the application with a petition that complies with the requirements prescribed for the petition authorized by Subsection (b), except that the minimum number of signatures that must appear on the petition required by this subsection is 250. If the candidate chooses to file the petition authorized by Subsection (b) instead of the filing fee, the minimum number of signatures required for that petition is increased by 250 ...", § 172.021(e); and

"[t]he minimum number of signatures that must appear on the petition authorized by section 172.021(b) is: ... (2) for district, county, or precinct office ... (A) 500 ...", § 172.025.

The first sentence of § 172.021(e) above provides that for certain elective judicial offices, including that of Justice of the Court of Appeals, candidates who elect to pay a filing fee must also include a petition containing 250 signatures. This requirement is unique to Harris County, because it is the only county that fulfills the population requirement of more than 2,400,000 as set out in the statute. This requirement also applies to the office sought here, because it covers a court of appeals district which includes Harris County. Tex.Elec. Code Ann. § 172.024(a)(8) (Vernon Supp. 1988). Candidates for other judicial offices outside of Harris County, and whose geographical jurisdiction does not include Harris County, are not required to submit a petition if they pay a filing fee. The first sentence of § 172.021(e) makes clear that it relates to judicial candidates in Harris County, and in geographical districts which include all or part of Harris County. However, it is the next-to-last sentence of this subsection, concerning the signature requirements for judicial candidates who choose not to pay the filing fee, which is less clear:

"If the candidate chooses to file the petition authorized by Subsection (b) instead of the filing fee, the minimum number of signatures required for that petition *is increased by 250.*" (emphasis added).

This latter sentence was added to § 172.021(e) by an amendment effective September 1, 1987. Prior to this amendment, the statute required only that Harris County judicial candidates obtain 250 signatures on their petitions if they elected to pay the filing fee. However, under the old statute, if they chose to file a petition in lieu of a filing fee, they were subject to the requirements of § 172.025, which required only 500 signatures in order to avoid the filing fee. The amendment of § 172.021(e) creates a problem of interpretation. The statute is unclear as to whether a Harris County judicial candidate must increase the original 250–signature requirement of this subsection by an additional 250 to avoid the filing fee; or increase the 500–signature requirement set out in § 172.025 by 250 to avoid the filing fee. The former interpretation would mandate for Harris County judicial candidates a total of 500 signatures; the latter, 750. A reasonable argument can be made for either interpretation.

Relator Cohen points out that under the prior version of § 172.021(e), a Harris County judicial candidate was required to have 500 signatures on his petition to avoid the filing fee, because that was the number specified by § 172.025. He reasons that the amendment could not have been adopted to require what was already in effect; therefore, it must have been adopted to increase the total signatures required from 500 to 750. Otherwise, the amendment of § 172.021(e) would have been a useless act. This would be contrary to the well-settled rule of statutory con-

struction that the legislature is never presumed to do a useless act. *See Hunter v. Fort Worth Capital Corp.* 620 S.W.2d 547, 551 (Tex.1981). Further, the Code Construction Act provides that "the entire statute is intended to be effective," and a "just and reasonable result is intended." Tex. Gov't.Code Ann. §§ 311.021(2), (3) (Vernon 1988). The Code Construction Act is specifically incorporated into the Election Code by § 1.0003 (Vernon Supp.1988). Therefore, it is reasonable to assume that the legislature, by amending § 172.021(e), simply intended that a judicial candidate in an election involving a highly-populated county like Harris be required to obtain more signatures than candidates in less densely populated counties.

Scott, however, proffers a different interpretation of the statute. He argues that the amendment to § 172.021(e) simply makes that provision of the Election Code an internally consistent and specific statute, applicable only to Harris County without reference to any other statute. This internal consistency is achieved by the amendment, without reference to § 172.025, simply by adding the 250–signature increase to the 250–signature requirement already contained within the statute relative to Harris County judicial candidates who elect to pay the filing fee. Thus, only 500 signatures should be required of Harris County judicial candidates who elect not to pay the filing fee. Scott re-asserts that this is a special, independent statute applying to Harris County judicial candidates only. The fact that § 172.021(e) requires the same number of petition signatures for filings in lieu of a filing fee as does § 172.025 is immaterial. He contends that this interpretation is more reasonable and just, because it does not penalize Harris County candidates who cannot afford to pay the filing fee by requiring them to obtain a larger number of signatures than candidates similarly situated in other counties.

In a per curiam opinion, the First Court of Appeals agreed with the interpretation advanced by Cohen, that the amendment of § 172.021(e) resulted in a 750–signature requirement for Harris County judicial candidates who choose not to pay a filing fee. *Plummer v. Veselka,* 744 S.W.2d 347 (Tex. App.—Houston [1st Dist.] 1988). That opinion did not elaborate as to how it reached that conclusion. We regard each of the interpretations advanced by the parties as equally reasonable. Because of the ambiguity in the statute which generates this conflict, we consider it proper to turn to the legislative history to assist us in determining which result the legislature intended by this amendment to § 172.021(e). *See San Antonio General Drivers, Etc. v. Thornton,* 156 Tex. 641, 299 S.W.2d 911, 914 (1957).

We have the benefit of a limited legislative history furnished us by the House Committee On Elections, and audio tapes relative to the minutes of the Senate Committee On State Affairs concerning the discussions on S.B. 495, which amended § 172.021(e). The Bill Analysis presented to the Elections Committee by Senator Gene Green, the bill's sponsor, provides under "Purpose" the following explanation:

"The bill would make changes in requirements for specific judicial candidates in Harris County, making all these candidates, including justice of the peace candidates, *either pay a fee plus 250 signatures* on a petition, *or 750 signatures and no fee.*" (emphasis added).

Further, the tapes of hearings of the Senate Committee On State Affairs reflect that the purpose of the amendment was to require that Harris County judicial candidates must accompany their application with petitions containing a minimum of 750 signatures if they intended to file for office without paying the filing fee.

While the views of legislative committees as to the intended effect of a statute are not controlling, their views are entitled to great respect and some weight in arriving at the correct interpretation. *See National Carloading Corporation v. Phoenix–El Paso Express Inc.,* 178 S.W.2d 133, 137

(Tex.Civ.App.—El Paso), *aff'd*, 142 Tex. 141, 176 S.W.2d 564 (1943). Therefore, after a careful review of the circumstances of the amendment, its statutory relationship to other provisions within the Election Code, and its limited legislative history, we conclude that Relator's interpretation of § 172.021(e) is correct. We hold that § 172.021(e) requires that candidates for the judicial offices referred to therein, who seek to file for office without paying a filing fee, must accompany their applications with a petition containing a minimum of 750 valid signatures.

■ The real-party-in-interest, Jim Scott, does not dispute that there are some 421 duplicate signatures contained in his petition filed in lieu of filing fee. However, he argues that the duplicate signatures should be permissible because they were submitted on two separate forms furnished to him by the Secretary of State, one of which contained confusing instructions. Further, he contends he was misled by an employee of the Secretary of State's office as to the permissibility of duplicate signatures. The two separate forms referred to by Scott are:

(1) Elections form # 880004, entitled PETITION FOR JUDICIAL OFFICE ON PRIMARY BALLOT; and

(2) Elections form # 880002 entitled PETITION IN LIEU OF A FILING FEE (for use in a primary election.)

These forms are prescribed by the Secretary of State in accordance with Tex.Election Code Ann § 31.002 (Vernon 1986). With the exception of the above titles which appear in bold-face type on the front side of the forms and certain instructions provided on the reverse sides, the forms are identical. The first, form # 880004, was apparently designed for use by Harris County judicial candidates who elect to pay the filing fee; it must have 250 signatures, in accordance with § 172.021(e). The second, form # 880002, was apparently designed to be used by all candidates who elect not to pay a filing fee. As to the essential content of the forms, there is no apparent reason why either form could not be utilized to support an application with or without a filing fee, provided the requisite number of valid signatures were properly obtained. In fact, Scott utilized both forms to support his application in lieu of filing fee. However, we find no basis for concluding that a prospective candidate is entitled to have an eligible voter sign each of the two forms, and then have that signature counted twice toward satisfying the minimum requirements *for the single purpose of avoiding the filing fee. See Leal v. Mather*, 709 S.W.2d 269, 270; *White v. Stanley*, 707 S.W.2d 883, 885 (Tex.1986). The technical title of the forms cannot operate to permit two separate signatures by the same person to be counted toward satisfying the statutory petition requirements. Nor can the possibility that Scott *may* have been misled by someone in the Secretary of State's office operate to allow such a result.

■ Accordingly, we find that the duplicate signatures contained on Scott's petitions filed in lieu of filing fee cannot be counted to satisfy the statutory minimum of 750. As stated, the total number of signatures on the petition forms submitted by Scott is 1,071. The number of duplicate signatures is at least 421, leaving a net total of 650 valid signatures on his petition filed to avoid the filing fee. We, therefore, hold that Jim Scott is not entitled to have his name placed on the ballot for the Republican General Primary Election to be held on March 8, 1988, as a candidate for the office of Justice, Court of Appeals for the First Court of Appeals District, Place 4, because he has failed to accompany his application for a place on the ballot with a petition signed by at least 750 registered voters of the First Court of Appeals District the territory, from which the office sought is elected.

We have jurisdiction to issue a mandamus to compel performance of any duty imposed by law on the responsible party officials under the circumstances here presented. Tex.Elec.Code Ann. §§ 161.009,

273.061 (Vernon 1986). We find that it is the duty of George Strake, as chairman of the Republican Executive Committee, under Tex.Elec.Code Ann. § 141.032(a), (d), (e) (Vernon 1986), to reject the application of a candidate which does not comply with the requirements of law as to form, content and procedure. Accordingly, the writ of mandamus is granted directing Respondent George Strake to withdraw his certification of Jim Scott as a candidate for the position of Justice, Court of Appeals for the First Court of Appeals District, Place 4, on the 1988 Republican General Primary Election Ballot, and to exclude the name of Jim Scott from that ballot as a candidate for the office.

Writs of mandamus shall also issue to each of the County Chairmen of the Republican Party Executive Committees for each of the fourteen counties that comprise the First Court of Appeals District, directing each of them in that capacity and as chairmen of their respective County Primary Committees (if existent), to exclude from the ballot of the 1988 Republican General Primary Election, in each of their respective counties, the name of Jim Scott as a candidate for the office of Justice, Court of Appeals for the First Court of Appeals District, Place 4.

In view of the impending March 8, 1988, primary, motions for rehearing will not be entertained, and the writs of mandamus will issue immediately.

The application in this cause for writ of mandamus as to the Secretary of State, Jack Rains, is dismissed for want of jurisdiction.