FLACK 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-555-CV





DIANNE FLACK,



 APPELLANT


vs.





LAWRENCE T. FLACK,



 APPELLEE



 




FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT



NO. 95-15, HONORABLE D. V. HAMMOND, JUDGE PRESIDING



 


 



 Dianne Flack, appellant, sued Lawrence Flack, appellee, for divorce. The trial
court granted the divorce on the ground of insupportability and divided the community estate. 
Mrs. Flack appeals, arguing that the trial court erred by refusing to enforce a buy-sell agreement
entered into by the Flacks, and three other shareholders of Flack Interiors, Inc. She also argues
that the trial court abused its discretion in dividing the community estate. We will affirm the
judgment of the trial court. 



BACKGROUND


 Dianne and Lawrence Flack were married in 1965. In the beginning of the
marriage, Mrs. Flack operated an interior design business, Dianne Flack Interiors, out of their
home, and Mr. Flack worked elsewhere as a salesman. Eventually, Mr. Flack quit his job and
began working full-time for Dianne Flack Interiors. The Flacks incorporated the business in 1975
as the sole shareholders. Mr. Flack became President and handled the advertising and sales for
the corporation, and Mrs. Flack became Vice-President and handled the design work. The
business at that time had an up-scale image and provided interior design services for expensive
homes. The Flacks purchased the "Wurzbach property" in San Antonio, which they leased to the
corporation.

 In the 1980's, the business suffered financial difficulties. Fearing bankruptcy, the
Flacks hired D.M. Reid, a company that organizes special sales events, to sell its inventory and
raise cash. D.M. Reid relied on a high-volume, low-price strategy, and the business began to
recover financially. The Flacks then hired D.M. Reid's employees, Kim Gilbert and Jerry Horhn,
to become part of their management team along with a former Flack employee, Marian Chester. 
While the company became more profitable, Mrs. Flack objected to the management team's
aggressive marketing approach and objected to many of the company's daily operations.

 In 1991, Chester, Gilbert, and Horhn purchased a minority interest in the
corporation from the Flacks, and all parties signed a buy-sell agreement. Under that agreement,
when a shareholder offers to purchase another shareholder's stock in the corporation by tendering
a written offer, the offeree shareholder must either sell his ownership interest at the stated terms
or buy the offeror's interest under those same terms.

 Mrs. Flack filed for divorce in 1991. On July 20th of that year, she made an offer
to Mr. Flack to purchase his interest in their 1200 shares of corporate stock, which she concedes
was community property. Mr. Flack did not respond to the offer. Mrs. Flack alleged in her third
amended original petition that she was entitled to specific performance of the buy-sell agreement,
and that under the agreement the 1200 shares would become her separate property.

 The trial court refused to enforce the buy-sell agreement and awarded all 1200
shares of stock to Mr. Flack. The other primary assets awarded to him consisted of the Wurzbach
property, a home at Horseshoe Bay, and three notes receivable from shareholders Chester,
Gilbert, and Horhn. The primary award to Mrs. Flack consisted of Mr. Flack's promissory note
in the amount of $537,814. The trial court ordered Mr. Flack to apply one-half of the proceeds
from the sale of the home at Horseshoe Bay to reduce the principal of the note.



DISCUSSION


Buy-Sell Agreement


 Dianne Flack's third, fourth, and fifth points of error address the buy-sell
agreement. She complains that the trial court erred as a matter of law by refusing to enforce this
agreement. She also contends that the trial court erroneously construed the agreement to create
only community property rights between Mr. and Mrs. Flack, and that she was divested of her
separate property right to initiate the buy-sell procedure. Both spouses agree that the stock itself
was acquired during the marriage and is therefore community property. See Tex. Fam. Code
Ann. § 5.01(b) (West 1993).

 Mrs. Flack states in her brief that she has "never claimed that execution of the Buy-Sell Agreement partitioned the stock." Rather, she contends that the agreement creates a separate
property right "to force Husband to buy or sell his interest in the community shares of stock so
that, after the sale, the acquiring spouse would own the stock as separate property." However,
absent a gift by Mr. Flack of his interest in the stock, the parties must create a partition or
exchange in order to convert community property into separate property. Tex. Fam. Code Ann.
§ 5.52 (West 1993); Tex. Const. art. 16, § 15; Hilley v. Hilley, 342 S.W.2d 565, 568 (Tex.
1961). Because Mrs. Flack does not contend that Mr. Flack made a gift of his interest in the
stock to her, the buy-sell agreement must at least provide for a future partition or exchange in
order for either party to acquire the other's stock as separate property.

 Spouses may exchange or partition community property into separate property by
a written agreement signed by both parties. Tex. Fam. Code Ann. § 5.54 (West 1993). 
However, the language of the agreement cannot merely imply a partition or exchange. The
language must be specific. See McBride v. McBride, 797 S.W.2d 689, 692 (Tex.App.--Houston
[14th Dist.] 1990, writ denied) (forfeiture provision in marital property settlement agreement did
not constitute partition agreement because there was no reference to partition); Collins v. Collins,
752 S.W.2d 636, 637 (Tex. App.--Fort Worth 1988, writ refused) (joint income tax return signed
by both parties and listing assets as separate property did not constitute partition agreement absent
specific language indicating parties' intent to partition); Maples v. Nimitz, 615 S.W.2d 690, 695
(Tex. 1981) (partition was fictional without specific reference to "partition").

 The buy-sell agreement makes no specific reference to a right to partition or
exchange the community property interest. Nor does the agreement make any reference to the
creation of a separate property right. Article V of the buy-sell agreement reads in part:



 Notwithstanding the foregoing Buy-Sell provisions, in the event that any
Shareholder wishes to purchase the outstanding stock ownership interest of any
remaining Shareholder(s), the Shareholder desiring to make such purchase
(hereinafter termed the "Offeror") shall deliver notice in writing . . . to the
Shareholder whose interest he desires to purchase (hereinafter termed the
"Offeree") stating the price, terms and conditions of such proposed sale or transfer.


 For a period of thirty (30) days after receipt of said notice by the Offeree,
the Offeree shall have an option to purchase the corporate stock ownership interest
of the Offeror at the same pro rata price and on the terms and conditions stated in
the original Offeror's notice.


 Should the Offeree fail to purchase the corporate stock ownership interest
of the Offeror within said thirty-day period or should the Offeree fail to decline in
writing to purchase the offered corporate stock ownership interest within such
thirty-day period, the Offeree shall be determined to have offered for sale all of its
interest in the corporation to the Offeror at the same pro rata price, terms, and
conditions as is found in the original Offeror's notice . . .[.]

 


The language of this provision does not refer to altering the character of the community property
should either spouse choose to exercise the buy-sell right. No mention of "partition" or
"exchange" is made. Nowhere does the agreement provide that Mrs. Flack has the right to
exchange her community property funds for Mr. Flack's interest in community stock, taking the
stock as her separate property. Moreover, the Flacks did not execute this agreement solely
between themselves; they entered into this agreement with Chester, Horhn, and Gilbert,
suggesting that the purpose of the provision was to maintain the Flacks' control of a closely held
corporation, rather than to alter the character of the stock. We conclude that the buy-sell
agreement creates no separate property right and creates no right to force an exchange or partition
of the community property stock. Mrs. Flack's points of error three, four, and five are overruled.

 In her first and second points of error, Mrs. Flack complains that the trial court
erred in admitting parol evidence to construe the buy-sell agreement because the agreement is
unambiguous and because Mr. Flack did not plead or offer evidence to show any ambiguity. Mr.
Flack had provided evidence that the parties did not intend for the buy-sell provision to apply to
transfers of stock between the Flacks. We do not reach these points of error because even if the
provision were to apply to the Flacks, the plain language of the buy-sell agreement does not
provide for a partition or exchange of their community property stock. Therefore, the stock
remained community property and the trial court correctly included the 1200 shares in the
community estate to be divided. Tex. Fam. Code Ann. § 3.63(a) (West 1993); see Cameron v.
Cameron, 641 S.W.2d 210, 214-15 (Tex. 1982) ("estate of the parties" refers to community
property).



 Division of the Estate


 In her sixth point of error, Mrs. Flack argues that the trial court abused its
discretion in dividing the community estate. She complains the division was manifestly unjust
because the trial court excluded her from the business, awarded all the income-producing property
to Mr. Flack, and overvalued the indebtedness on the Wurzbach property.

 We cannot disturb a trial court's division of a marital estate absent a clear abuse
of discretion. Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981). Because Dianne Flack did not
request findings of fact and conclusions of law in this case, (1) we must affirm the judgment of the
trial court on any legal theory that finds support in the evidence. Allen v. Allen, 717 S.W.2d 311,
313 (Tex. 1986); Roever v. Roever, 824 S.W.2d 674, 676 (Tex. App.--Dallas 1992, no writ).

 The trial court may consider many factors in making its division, including the
nature of the property. Murff, 615 S.W.2d at 699. The trial court may also consider the debts
secured by liens on property awarded to each spouse, the liabilities, and the parties' abilities to
manage the encumbered property so that the property will not be foreclosed. Walker v. Walker,
527 S.W.2d 200, 203 (Tex. Civ. App.--Fort Worth 1975, no writ). In light of these
considerations, we cannot say that the trial court abused its discretion in dividing the community
estate.

 In this case, the major assets comprised the family business: the 1200 shares of
stock and the Wurzbach property owned by the spouses and leased to the corporation. The
business had to prosper in order for either spouse to receive any value from these assets. 
Therefore, the court was entitled to divide the assets in the manner most likely to ensure the
greatest chance of the business' survival.

 The trial court could reasonably conclude from the evidence that Mrs. Flack should
be excluded from the business in order to ensure its survival. Dan Henry Hanke, the Flacks'
accountant, testified that the company was on "incredibly thin ice" in the mid-eighties before
D.M. Reid entered. He testified that D.M. Reid and the management team's switch from Mrs.
Flack's up-scale philosophy to a more aggressive marketing approach caused the business to start
making money again and to become profitable. He testified that Mrs. Flack objected to this
marketing technique and to the business accounting method, costing the business "hours upon
hours" of time in its operation of daily affairs. He also stated that Mrs. Flack had indicated that
she would fire the management team if given control of the company. Hanke believed that
without question the business would be less profitable if the management team's aggressive
marketing approach changed.

 Gilbert, the general manager of the business, testified that Mr. Flack is able to
work with the management team, but that it is very difficult to work with Mrs. Flack. Gilbert
believed that Mrs. Flack had cost the company money by her objections to the company's
accounting methods and to proposed lease agreements. From the evidence, the trial court could
reasonably conclude that the 1200 shares of stock, representing the controlling interest of the
business, should be awarded to Mr. Flack.

 In addition to the stock, the trial court awarded all the other potential income-producing property to Mr. Flack, while awarding Mrs. Flack a $537,814 promissory note secured
by the 1200 shares of the corporation. A trial court may award one spouse a money judgment to
balance out a disproportionate award of assets to the other spouse when the court gives due
consideration to the nature and type of property involved and the relative conditions,
circumstances, and capabilities of the parties. Finch v. Finch, 825 S.W.2d 218, 224 (Tex.
App.--Houston [1st Dist] 1992, no writ) (quoting Hanson v. Hanson, 672 S.W.2d 274, 278 (Tex.
App.--Houston [14th Dist.] 1984, writ dism'd w.o.j.)). In addition to the 1200 shares of stock,
the other potential income-producing assets awarded to Mr. Flack consisted of the Wurzbach
property and three notes receivable from the minority shareholders, Gilbert, Chester, and Horhn.

 The trial court could reasonably conclude that these business-related assets should
be kept together in order to ensure the business' survival. Mr. Hanke testified that single
ownership of the Wurzbach premises and the business "makes a lot more sense," and agreed that
this would help keep the business going. He also testified that the stock purchase agreement
between the Flacks and the minority shareholders provided for a deferral of the minority
shareholders' note payments and this deferral kept cash in the business. Hanke believed that Mrs.
Flack would call these notes and foreclose on the stock, despite this provision. From the
circumstances, the trial court could reasonably conclude that this bundle of business-related assets
should be kept together and awarded to Mr. Flack. See Wallace v. Wallace, 623 S.W.2d 723,
728 (Tex. Civ. App.--Houston [1st Dist.] 1981, writ ref'd n.r.e) (trial court did not abuse its
discretion in awarding all stock and mineral interests to husband and a money judgment to wife
when, among other things, there was evidence to support court's finding that great conflict
between the parties made it difficult for them to continue the business together). 

 Moreover, Dianne Flack's money judgment is secured by the 1200 shares of stock. 
Should Mr. Flack default on the note, she would acquire control of the corporation. In addition,
the trial court ordered Mr. Flack to pay for all debts on the real and personal property he received
and to indemnify and hold Mrs. Flack harmless from his failure to pay these debts.

 Finally, the trial court did not abuse its discretion in its valuation of the Wurzbach
property indebtedness. The Wurzbach property secures two lien notes, one to Bexar Savings for
$134,000 and the other to Bonnet Resources for $1,535,000. The parties stipulated that the
unencumbered fair market value of the property was $1.2 million. Mrs. Flack argues that the trial
court improperly reduced the community estate by $469,000, the difference between the fair
market value of the property and its encumbrances, and that this valuation substantially reduced
the amount of the note awarded to her. She complains that the record conclusively shows that
much of this $469,000 will be forgiven in a restructuring arrangement and that, therefore, the
court's division is fundamentally unfair. 

 Because Mrs. Flack did not request findings of fact and conclusions of law, we do
not know what value the trial court assigned to the Wurzbach debt that Mr. Flack is ordered to
pay. We have reviewed the record, however, and it does not conclusively show that all or part
of $469,000 will be forgiven. While Mr. Hanke, the Flacks' accountant, testified that he believed
Bonnet Resources would probably accept some discount on the debt, he said that the amount of
the discount was "a total unknown at this point of time" and that there were "other problems" in
working out a restructuring arrangement. The trial court could reasonably conclude from the
evidence that the fact or amount of a possible discount was not discernable at the time of trial. 
See In Re Marriage of Jackson, 506 S.W.2d 261, 266 (Tex. Civ. App.--Amarillo 1974, writ
dism'd w.o.j.) (trial court is entitled to consider the weight and credibility of the testimony and
other evidence as to valuations to be assigned to property).

 We conclude that Mrs. Flack has not demonstrated that the trial court abused its
discretion in dividing the estate. It could reasonably have determined that Mr. Flack should be
awarded the bundle of business-related assets, while Mrs. Flack should receive a note secured by
the 1200 shares of stock. Moreover, the evidence was not conclusive with respect to forgiveness
of part of the debt on the Wurzbach property. In light of the evidence and the absence of findings
of facts and conclusions of law, we overrule Mrs. Flack's sixth point of error.



CONCLUSION


 Accordingly, we affirm the trial court's judgment.





 

 Jimmy Carroll, Chief Justice


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith


Affirmed


Filed: December 8, 1993


Do Not Publish


1.   While the trial court notes in its divorce decree that all rights in the buy-sell
agreement are community property and that it made a just and right division of the
marital estate, these comments cannot constitute reviewable fact findings on appeal. A
trial court shall not recite findings of fact in a judgment, but must file them in a separate
document. Tex. R. Civ. P. 299a.