Douglas G. BEATTY, Individually and as Independent Executor of the Estate of Kathryn V. Holmes, Deceased, Appellant

v.

Harry HOLMES, II, Individually and as Independent Executor of the Estate of Thomas J. Holmes, Sr., Deceased, and as Trustee of Any Trust Named as Legatee in the Will of Thomas J. Holmes, Sr., Deceased, Appellee.

No. 14–03–00663–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 14, 2007.

Noel Lane Stout and Joseph S. Horrigan, Houston, TX, for appellants.

Dianne Whitehorn Lawter, Jack W. Lawter, Jennifer Bruch Hogan, Richard P. Hogan, Jr., Houston, TX, for appellees.

Panel consists of Justices HUDSON, FOWLER, and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

In this appeal, and in companion case number 14–05–00474–CV, we must address several issues of first impression and determine whether Thomas J. Holmes, Sr. and Kathryn V. Holmes, a husband and wife, both deceased, owned certain brokerage accounts and securities in certificate form with a right of survivorship. In this case, appellant, Douglas G. Beatty, Individually and as Independent Executor of the Estate of Kathryn V. Holmes, Deceased ("Beatty"), challenges the portions of the trial court's partial summary judgment, ruling that the spouses owned a Dain Rauscher account and certain securities in certificate form with a right of survivorship and thus awarding these assets to appellee, Harry Holmes, II, Individually, and as Independent Executor of the Estate of Thomas J. Holmes, Sr., Deceased ("Holmes"). We reverse and remand with respect to the Dain Rauscher account and securities in certificate form. We affirm the remainder of the judgment.

## I. Background

Thomas and Kathryn Holmes were married in 1972. Kathryn died on July 22, 1999. Beatty, Kathryn's son from a previous marriage, was appointed independent executor of her estate. Thomas died on May 4, 2000, about nine months after Kathryn's death. Holmes, Thomas's son from a previous marriage, was appointed independent executor of his estate.

During the marriage, Kathryn and Thomas placed a significant amount of their community property into brokerage accounts.[1] When Kathryn died, some brokerage accounts were in existence and held securities. Kathryn and Thomas also held some securities in certificate form that had been issued out of brokerage accounts. The property that is the subject of these appeals has a multi-million dollar value.

Beatty sued Holmes, seeking a declaratory judgment that certain accounts and securities were not owned by Kathryn and Thomas with a right of survivorship and thus did not pass to Thomas upon Kathryn's death. Instead, Beatty claimed that Kathryn's one-half interest in this community property became assets of her estate upon her death. Holmes filed a counterclaim, alleging the property was owned by Kathryn and Thomas with a right of survivorship. Therefore, Holmes sought an adjudication that the accounts and securities became the sole property of Thomas upon Kathryn's death and subsequently became assets of Thomas's estate upon his death.

Relative to this appeal, Holmes filed a motion for partial summary judgment. On March 11, 2003, the trial court signed a "Summary Judgment," granting Holmes's motion in part as to certain accounts and securities.[2] Pertinent to this appeal, the trial court ruled the following are the property of Holmes, as assets of Thomas's Estate, and Kathryn's Estate has no interest therein:

- a Dain Rauscher brokerage account;[3] and

- Thirty-six securities which had been issued out of a Kemper Securities, Inc. account,[4] a Raymond James & Associates, Inc. account, or a Principal/Eppler, Guerin & Turner, Inc. account[5] and were held in certificate form by Kathryn and Thomas during the marriage.

---

1. Holmes agrees the assets were community property only for purposes of the motion for summary judgment and this appeal. He has reserved his right to claim the assets were Thomas's separate property or to assert a claim for contribution if it is determined some or all of the property did not pass to Thomas by right of survivorship when Kathryn died.

2. On the same day, the trial court also entered a separate "Order on Partial Summary Judgment" denying Holmes's motion as to other brokerage accounts and securities. Subsequently, Holmes and Beatty each filed a further motion for summary judgment to address these other accounts and securities, as well as additional assets. The trial court's order on the subsequent motions is the subject of the companion appeal.

3. In the order that is the subject of the companion appeal, the trial court granted summary judgment in Beatty's favor as to certain securities that had been issued out of the Dain Rauscher account. This appeal involves only the account.

4. The trial court also granted summary judgment in Holmes's favor as to the Kemper account, but Beatty does not appeal that ruling because the account contained no assets at Kathryn's death.

5. In the order that is the subject of the companion appeal, the trial court granted summary judgment in Beatty's favor as to the Raymond James and Principal accounts. This appeal involves only securities that had been issued out of the accounts.

This order was made final and appealable after the trial court severed it from the remainder of the case. Beatty appeals from this order.

## II. THE ISSUES AND OUR REVIEW

Holmes moved for summary judgment on the ground that the Dain Rauscher brokerage account and the securities held in certificate form were owned by Kathryn and Thomas with a right of survivorship pursuant to applicable provisions of the Texas Probate Code. In two issues, Beatty contends the trial court erred by granting summary judgment in favor of Holmes because (1) the Dain Rauscher account agreement did not create a right of survivorship; and (2) the securities held in certificate form were not subject to a right of survivorship.

■■■ Under well-established standards governing a traditional motion for summary judgment, the movant must show that there is no genuine issue as to any material fact and he is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). We review a summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

## III. THE DAIN RAUSCHER ACCOUNT

In his first issue, Beatty contends the Dain Rauscher account agreement did not create a right of survivorship under applicable provisions of the Texas Probate Code. For the reasons explained below, we agree.

## A. Applicable Probate Code Provisions

Chapter XI of the Texas Probate Code governs non-testamentary transfers of property. *See* TEX. PROB.CODE ANN. §§ 436–462 (Vernon 2003 & Vernon Supp. 2006). Chapter XI is divided into three parts. *See id.* Part 1 addresses "Multiple–Party Accounts" in general. *See* TEX. PROB.CODE ANN. §§ 436–449. Part 2 concerns "Provisions Relating to Effect of Death." *See* TEX. PROB.CODE ANN. § 450. Part 3 is entitled "Community Property With Right of Survivorship." TEX. PROB. CODE ANN. §§ 451–462.

As the title indicates, Part 3 includes various provisions governing a right of survivorship in community property. *See id.; see also* TEX. PROB.CODE ANN. § 46(b) (Vernon 2003) (stating that agreements between spouses regarding rights of survivorship in community property are governed by Part 3 of Chapter XI). In particular, section 451 provides, "[a]t any time, spouses may agree between themselves that all or part of their community property, then existing or to be acquired, becomes the property of the surviving spouse on the death of a spouse." TEX. PROB.CODE ANN. § 451. Section 452, entitled "Formalities," establishes the requirements for an effective agreement between spouses as follows:

> An agreement between spouses creating a right of survivorship in community property must be in writing and signed by both spouses. If an agreement in writing is signed by both spouses, the agreement shall be sufficient to create a right of survivorship in the community property described in the agreement if it includes any of the following phrases:
> (1) "with right of survivorship";
> (2) "will become the property of the survivor";
> (3) "will vest in and belong to the surviving spouse"; or

(4) "shall pass to the surviving spouse."

An agreement that otherwise meets the requirements of this part, however, shall be effective without including any of those phrases.

TEX. PROB.CODE ANN. § 452. The party claiming that spouses agreed to create a right of survivorship under Part 3 bears the burden to prove the agreement complied with section 452. *See* TEX. PROB.CODE ANN. § 456(a), (b)(3) (providing applicant for adjudication that an agreement effectively created a right of survivorship under Part 3 must prove to the satisfaction of the court that, inter alia, the agreement was executed with the formalities required by law); *see also Pressler v. Lytle State Bank,* 982 S.W.2d 561, 564 (Tex.App.-San Antonio 1998, no writ) (recognizing party claiming to own a joint account pursuant to a right of survivorship under section 439 of Part 1, governing multi-party accounts in general, bears burden to prove the claim).

In this case, the parties agree that Kathryn and Thomas were required to comply with section 452 to create a right of survivorship in the Dain Rauscher account.

**B. The Dain Rauscher Account Agreement**

To open the Dain Rauscher account, Kathryn and Thomas both signed a written "JOINT ACCOUNT AGREEMENT" dated February 24, 1994.[6] This document is a pre-printed form provided by the brokerage firm with information to be completed particular to Kathryn's and Thomas's account. In the agreement, the owners of the account are identified as "Thomas J. Holmes and Kathryn V. Holmes, JT TEN."

_____

**6.** When Thomas and Kathryn opened the account, the securities firm was known as

At the bottom of the agreement is the following instruction: "Strike out paragraph (a) or (b) whichever is inapplicable, and if paragraph (b) is retained, fill in the names and percentage amounts of the interests of the respective parties." Paragraphs (a) and (b) provide the following choices:

(a) It is the express intention of the undersigned to create an estate or account as joint tenants with rights of survivorship and not as tenants in common. In the event of the death of either of the undersigned, the entire interest in the joint account shall be vested in the survivor or survivors on the same terms and conditions as theretofore held, without in any manner releasing the decedent's estate from the liability provided for in the next preceding paragraph.

(b) In the event of the death of either or any of the undersigned the interests in the account as of the close of business on the date of the death of the decedent (or on the next following business day if the date of death is not a business day), shall be as follows:

_____ or his or her
 Name of Participant
estate _____%

_____ or his or her
 Name of Participant
estate _____%

_____ or his or her
 Name of Participant
estate _____%

but any taxes, costs, expenses or other charges becoming a lien against or being payable out of the account as the result of the death of the decedent, or through the exercise by his or her estate or representatives of any rights in the ac-

_____

Rauscher Pierce.

count shall, so far as possible, be deducted from the interest of the estate of such decedent. This provision shall not release the decedent's estate from the liability provided for in the paragraph next preceding "(a)" above.

Neither paragraph (a) nor paragraph (b) was marked out, and none of the blanks in paragraph (b) were filled in.

Beneath paragraph (b) is another paragraph with the following statement: "The undersigned request you to open the joint account under the following designation: _____." This blank is not completed.

## C. The Dain Rauscher Account Agreement Did Not Satisfy Section 452

■ Beatty argues the Dain Rauscher account agreement did not satisfy section 452 because Kathryn and Thomas failed to designate the account as survivorship or non-survivorship. Beatty asserts that it is impossible to determine whether the spouses intended to own the account with a right of survivorship based on their failure to strike through paragraph (b) and specify a designation of the account in the space provided. In contrast, Holmes argues that Kathryn's and Thomas's failure to provide any names relative to paragraph (b) demonstrates they effectively chose paragraph (a).

We agree with Beatty that the account agreement did not clearly reflect intent to own the account with a right of survivorship. Kathryn and Thomas failed to take the one action required to clearly designate the account as held with a right of survivorship—affirmatively select paragraph (a). They could have marked out paragraph (b) if they had intended to select paragraph (a), but they did not do so. In addition, they did not complete the portion of the form requesting that they specify a designation for the account. Further,

in another paragraph of the form, they did not fill in blanks that would inform Dain Rauscher to whom communications should be directed. In fact, they did not complete any of the information requested on the form document. The only action they took regarding the form was to sign and date it. Having failed to fulfill any of the requested actions except for signing and dating the form, we cannot assume they chose the survivorship option set forth in paragraph (a).

In addition, to hold that Kathryn and Thomas effectively chose paragraph (a) by failing to provide names relative to paragraph (b), we must conclude paragraphs (a) and (b) were the only possible designations for the account. However, as this dispute illustrates, paragraphs (a) and (b) were not the only possible designations for the account. As urged by Beatty, there was also the option that the account pass pursuant to the testamentary provisions of the Probate Code upon the death of a spouse. Holmes argues that this option was not available because the instruction "Strike out paragraph (a) or (b) whichever is inapplicable ..." rendered the designations set forth in these paragraphs the only choices. However, the option that the account pass pursuant to the testamentary provisions of the Probate Code would always be available because parties must first comply with the applicable statute to effect a non-testamentary transfer under Chapter XI. *See* TEX. PROB.CODE ANN. §§ 436–462. The account agreement in its present form did not affirmatively reflect any intent to effect a non-testamentary transfer—through a right of survivorship or otherwise.

We note that Beatty cites for analogy several cases holding that joint account holders failed to create a right of survivorship under section 439(a), which governs right of survivorship in multiple-party ac-

counts in general. *See* TEX. PROB.CODE ANN. § 439(a).[7] Holmes contends these cases are inapplicable because section 439(a) requires more stringent language to create a right of survivorship than section 452.[8] However, with respect to the Dain Rauscher account agreement, we are not considering whether certain language is sufficient to satisfy section 452. If the spouses chose paragraph (a), the language contained therein clearly satisfied section 452. *See* TEX. PROB.CODE ANN. § 452. Instead, the issue is whether the spouses chose paragraph (a). We see no reason that cases applying section 439(a) cannot provide guidance when determining whether the spouses chose a paragraph providing a survivorship option.

Nevertheless, the cases cited by Beatty are not exactly on point. However, he cites two cases involving signature cards on which joint account holders failed to mark the appropriate box to affirmatively select either the option of ownership with right of survivorship or the competing option of ownership without right of survivorship. *See Estate of Graffagnino*, No. 09–00–434 CV, 2002 WL 31126901, at *2. (Tex. App.-Beaumont Sept. 26, 2002, pet. denied) (not designated for publication); *Ephran v. Frazier*, 840 S.W.2d 81, 82 (Tex.App.-Corpus Christi 1992, no writ). Thus, it was impossible to ascertain the parties' intent to create a right of survivorship from the signature cards. *See Estate of Graffagnino*, 2002 WL 31126901, at *2; *Ephran*, 840 S.W.2d at 82–83, 87.

We are presented with a different situation in that Kathryn and Thomas were not requested to mark a box corresponding to the selected designation. Rather, they were requested to mark out the inapplicable designation and also fill in a blank to specify a designation. Regardless, *Estate of Graffagnino* and *Ephran* at least instruct that the parties clearly express within the written agreement their intent to choose a survivorship option. *See Estate of Graffagnino*, 2002 WL 31126901, at *2; *Ephran*, 840 S.W.2d at 82–83, 87.[9]

---

7. Section 439(a) provides in relevant part:

 Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties against the estate of the decedent if, by a written agreement signed by the party who dies, the interest of such deceased party is made to survive to the surviving party or parties. Notwithstanding any other law, an agreement is sufficient to confer an absolute right of survivorship on parties to a joint account under this subsection if the agreement states in substantially the following form: "On the death of one party to a joint account, all sums in the account on the date of the death vest in and belong to the surviving party as his or her separate property and estate." A survivorship agreement will not be inferred from the mere fact that the account is a joint account. . . .

 TEX. PROB.CODE ANN. § 439(a). "The provisions of Part 1 apply to multiple party accounts held by spouses with a right of survivorship to the extent that such provisions are not inconsistent with the provisions of [Part 3]." TEX. PROB.CODE ANN. § 462.

8. On appeal, Beatty acknowledges section 452 is the operative provision in this case. However, in the absence of any authority construing section 452, he cites for guidance cases applying section 439(a).

9. Beatty relies on two other cases that are not persuasive. In *Kitchen v. Sawyer*, joint account holders failed to mark the appropriate box on a signature card to select one of three options: "Individual"; "Joint Tenancy with Right of Survivorship"; or "Partition and Joint Tenancy Agreement (If Accountholders are husband and wife)." 814 S.W.2d 798, 799 (Tex.App.-Dallas 1991, writ denied). Nonetheless, the surviving account holder suggested the agreement as a whole showed the account holders necessarily chose "Joint Tenancy with Right of Survivorship" because there were two account holders, who were not spouses; thus, the only other options, "Individual" and "Partition and Joint Tenancy Agreement (If Accountholders are husband and wife)," were inapplicable. *See id.* at 800. The court held that the signature card was

Because the Dain Rauscher agreement did not clearly demonstrate intent to choose the survivorship option, it failed to create a right of survivorship under section 452.

Finally, Holmes briefly suggests the account was owned with a right of survivorship because the agreement is entitled, "Thomas J. Holmes and Kathryn V. Holmes, JT TEN," and "JT TEN" is also shown on the face of securities issued from the account in certificate form. However, mere inclusion of "JT TEN" next to Kathryn's and Thomas's names in the account title did not sufficiently convey intent to create a right of survivorship. As Beatty asserts, parties may own property as joint tenants without being subject to a right of survivorship. Further, nothing in the account agreement as a whole indicated these initials meant "joint tenancy with right of survivorship." Moreover, inclusion of "JT TEN" on securities issued out of the account is immaterial when determining whether Kathryn and Thomas expressed intent to create a right of survivorship within the account agreement.

Accordingly, the trial court erred by ruling that Kathryn and Thomas created a right of survivorship in the Dain Rauscher account and thus holding the account is the property of Holmes, as an asset of Thomas's Estate. We sustain Beatty's first issue.

## IV. THE SECURITIES HELD IN CERTIFICATE FORM

In his second issue, Beatty contends the securities held in certificate form by Kathryn and Thomas were not owned with a right of survivorship. For the reasons explained below, we agree.

### A. The Securities

The thirty-six securities in certificate form that are subject of this appeal had been issued out of a Kemper Securities, Inc. account, a Raymond James & Associates account, or a Principal/Eppler, Guerin & Turner, Inc. account.[10] Thirty-four of the certificates were styled "THOMAS J. HOLMES & KATHRYN V. HOLMES, JT TEN" on the face of the certificates. These certificates provided the following on the back: "JT TEN—as joint tenancy with right of survivorship and not as tenancy in common."[11] Two of the certifi-

---

not an unambiguous agreement establishing a right of survivorship as required by section 439(a). *Id.* at 801. The court reasoned that its disposition was controlled by another case, in which the court held extrinsic evidence is inadmissible to prove intent to create a right of survivorship. *See id.* at 800–01 (citing *Chopin v. InterFirst Bank Dallas N A*, 694 S.W.2d 79 (Tex.App.-Dallas 1985, writ ref'd n.r.e.)). However, the court's reasoning seems wholly inapplicable because resolution of the issue in *Kitchen* did not involve consideration of extrinsic evidence. *See id.* at 799–801. In any event, the court never stated the parties' failure to affirmatively select a designation rendered the card insufficient to create a right of survivorship. *See id.* Thus, *Kitchen* is not controlling here. Beatty also cites *Herring v. Johnson*, No. 14–03–00266–CV, 2004 WL 395877 (Tex. App.-Houston [14th Dist.] March 4, 2004, pet. denied) (mem. op. on reh'g). However, *Herring* is distinguishable

from this case; the court found no right of survivorship, although the joint account holders marked the box corresponding to that designation, because the signature card lacked the decedent's requisite signature. *See id.* at *2.

10. All of these securities are outlined in the summary judgment order: those issued out of the Kemper Securities account are listed as items 1–5; those issued out of the Raymond James account are listed as items 6–35; and the one security issued out of the Principal/Eppler, Guerin & Turner account is listed as item 36.

11. These securities also provided that the abbreviation JT TEN "when used in the Inscription on the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations."

cates were styled "THOMAS J. HOLMES & KATHRYN V. HOLMES JT WROS" on the face of the certificates. These certificates did not provide a definition for "JT WROS." None of the certificates at issue were signed by Kathryn or Thomas because owners do not typically sign stocks or bonds until they are ready to sell or redeem them.

## B. Summary Judgment Grounds

Preliminarily, we must address some procedural issues with respect to the summary judgment grounds to be considered in this appeal. Holmes moved for summary judgment with respect to the securities in certificate form on two grounds: (1) the securities were owned with a right of survivorship because the brokerage account agreements created a right of survivorship pursuant to Probate Code section 452 and continued to govern the character of the securities after they were issued out of the accounts; and (2) alternatively, the securities were owned with a right of survivorship pursuant to a different Probate Code provision—section 450.

On appeal, Beatty urges two sub-issues to support his argument that the securities held in certificate form were not owned with a right of survivorship: (1) Probate Code section 450 cannot be utilized to create a right of survivorship in community property; and (2) the Kemper account agreement (which the trial court ruled was owned by Kathryn and Thomas with a right of survivorship) no longer governed the character of the securities issued out of the account in certificate form.

In response, Holmes asserts that Beatty effectively concedes the securities issued out of the Kemper account are owned with a right of survivorship because (1) he does not challenge the trial court's ruling the Kemper account was owned with a right of survivorship, and (2) he conceded in the trial court that securities are characterized in accordance with the accounts from which they were issued. We disagree that Beatty made any such concession in the trial court. Holmes refers to the following statement in Beatty's response to Holmes's motion for summary judgment: "if a valid community property with right of survivorship agreement existed between spouses at the time of the asset's acquisition, then the assets purchased at that time would be characterized accordingly." This statement apparently indicates Beatty agreed that a security was owned with a right of survivorship at the time it was purchased through an account governed by a valid survivorship agreement. His statement did not amount to a concession that a survivorship agreement governing an account continued to apply to a security after it was distributed from the account. Consequently, Beatty may challenge the trial court's ruling as to all the securities at issue.

As another procedural matter, Beatty's second sub-issue is directed solely to the securities issued out of the Kemper account. In this sub-issue, Beatty does not address securities issued out of the Raymond James and Principal accounts because the trial court did not rule these accounts were owned with a right of survivorship. Rather, in the separate order rendered the same day denying Holmes's motion for summary judgment as to some assets, the trial court denied Holmes's motion for summary judgment as to the Raymond James and Principal accounts. Nevertheless, in his responsive brief, Holmes asserts that we may uphold the trial court's summary judgment in this case on the ground that *all* securities were owned with a right of survivorship because the account agreements created a right of survivorship and continued to govern the

character of the securities after they were issued out of the accounts.[12]

■ We are presented with an unusual procedural situation. In its order, the trial court did not state the ground on which summary judgment was granted. Ordinarily, when a movant asserts multiple grounds for summary judgment, and the order does not specify the ground on which summary judgment was granted, the appellant must negate all grounds on appeal. *Lewis v. Adams,* 979 S.W.2d 831, 833 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (citing *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 381 (Tex.1993)). If the appellant fails to negate each ground upon which the judgment may have been granted, the appellate court must uphold the summary judgment. *See id.* Further, when the trial court's order does not specify the grounds relied upon, we must affirm the summary judgment if any of the independent summary judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872–73 (Tex.2000); *Ortiz v. Collins,* 203 S.W.3d 414, 420 (Tex.App.-Houston [14th Dist.] 2006, pet. denied).

However, we have considered the order granting summary judgment in conjunction with the order denying summary judgment as to other assets, rendered the same day. It is clear the trial court did not grant summary judgment as to the securities in certificate form on the ground that the account agreements created a right of survivorship and continued to govern the character of the securities after

they were issued out of the accounts. Significantly, the trial court ruled as follows: (1) the Kemper account and five securities issued out of that account *were* owned with a right of survivorship, but one security issued out of that account was *not* owned with a right of survivorship; (2) The Dain Rauscher account *was* owned with a right of survivorship, but the securities issued out of that account were *not* owned with a right of survivorship; (3) the Raymond James account was *not* owned with a right of survivorship, but the securities issued out of that account *were* owned with a right of survivorship; (4) the Principal account was *not* owned with a right of survivorship, but a security issued out of that account *was* owned with a right of survivorship. Therefore, it is obvious the trial court did not grant summary judgment on the ground that any survivorship provisions in the account agreements continued to govern the character of the securities after they were issued out of the accounts.

It would strain logic to require Beatty to challenge, and for this court to uphold, a summary judgment on a certain ground when it is abundantly obvious the trial court did not grant summary judgment on that ground. Accordingly, despite the trial court's failure to specifically express the ground on which summary judgment was granted, in this limited circumstance, we need not consider all grounds. We will consider the only ground on which summary judgment could possibly have been granted—Holmes's contention regarding Probate Code section 450.

---

**12.** Holmes acknowledges the trial court denied his motion for summary judgment as to the Raymond James and Principal accounts and that ruling is not the subject of this appeal; but, he contends we may determine whether these accounts were owned with a right of survivorship for purposes of deciding whether the securities issued out of these accounts were owned with a right of survivor-

ship. Due to Holmes's responsive brief, Beatty addresses securities issued out of the Raymond James and Principal accounts in his reply brief while also maintaining it was unnecessary to do so because the trial court did not grant summary judgment on the ground these securities were governed by the respective account agreements.

## C. Probate Code Section 450

Section 450, entitled "Provisions for Payment or Transfer at Death," is the only provision contained in Part 2 of Chapter XI of the Probate Code. TEX. PROB.CODE ANN. § 450. Section 450 provides in pertinent part:

(a) Any of the following provisions in an insurance policy, contract of employment, bond, mortgage, promissory note, deposit agreement, employees' trust, retirement account, deferred compensation arrangement, custodial agreement, pension plan, trust agreement, conveyance of real or personal property, *securities*, accounts with financial institutions as defined in Part 1 of this chapter, mutual fund account, *or any other written instrument effective as a contract*, gift, conveyance, or trust is deemed to be nontestamentary, and this code does not invalidate the instrument or any provision:

(1) that money or other benefits theretofore due to, controlled, or owned by a decedent shall be paid after his death to a person designated by the decedent in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently;

(2) that any money due or to become due under the instrument shall cease to be payable in event of the death of the promisee or the promissor before payment or demand; or

(3) that any property which is the subject of the instrument shall pass to a person designated by the decedent in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently.

TEX. PROB.CODE ANN. § 450(a) (emphasis added). Thus, section 450 expressly authorizes the non-testamentary transfer of money, property, or other benefits as provided in a variety of written instruments effective as contracts, including securities. *See id.; Holley v. Grigg*, 65 S.W.3d 289, 293 (Tex.App.-Eastland 2001, no pet.).

In his motion for summary judgment, Holmes argued that section 450 governs the transfer of securities being held as "joint tenants with right of survivorship." He further argues that most of the certificates at issue—those styled "JT TEN"—met the requisites of section 450 because "JT TEN" was defined on the back to mean "joint tenants with right of survivorship and not as tenants in common." Therefore, Holmes contends the securities passed to Thomas upon Kathryn's death as valid non-testamentary transfers pursuant to section 450.

In contrast, Beatty contends that section 450 may not be utilized to create a right of survivorship, especially in community property. According to Beatty, agreements to create a right of survivorship in community property are governed exclusively by Part 3; thus, spouses must comply with section 452 (contained in Part 3) to create a right of survivorship in community property.[13] Beatty argues that Holmes may not rely on section 450, which requires no signatures, to circumvent section 452, which requires the signatures of both spouses to create an effective surviv-

---

13. We note that Beatty apparently does not suggest section 450 is inapplicable to any community property, and his argument regarding section 450 is not limited to community property. In short, it is the creation of a joint tenancy with right of survivorship—whether in separate or community property— that Beatty contends cannot be the subject of section 450. He argues that creation of a joint tenancy with right of survivorship is governed by Part 1 (for multiple-party accounts in general) and Part 3 (for community property).

orship agreement. *Compare* TEX. PROB. CODE ANN. § 450 *with* § 452.

We are presented with an issue of first impression because we have found no authority addressing the relationship between section 450 and Part 3; particularly whether spouses may create a right of survivorship in certain types of community property, including securities, under section 450; or whether creation of a right of survivorship in all community property is controlled exclusively by Part 3. Section 450 and Part 3 are both included in Chapter XI, which governs non-testamentary transfers, but there is no provision in Chapter XI addressing interaction between section 450 and Part 3.

To support his argument that section 450 was not meant to create a right of survivorship in community property and Part 3 is the controlling provision, Beatty relies on the development of Texas law on the right of survivorship in community property, the language of section 450, and the provisions constituting Part 3. For the reasons explained below, we agree with Beatty.

**1. Development of Texas Law on Right of Survivorship in Community Property**

Beatty cites the development of Texas law on the right of survivorship in community property. Joint accounts with rights of survivorship involving community property have a "long and troubled history in Texas." *See Haas v. Voigt,* 940 S.W.2d 198, 201 (Tex.App.-San Antonio 1996, writ denied). Before 1987, it was unconstitutional for spouses to own community property with a right of survivorship. *See id.* (citing *Williams v. McKnight,* 402 S.W.2d 505, 507 (Tex.1966)). Instead, to create a right of survivorship in community property by agreement, the property had to first be partitioned into separate property. *See id.* (citing *Williams,* 402 S.W.2d at 507;

*Hilley v. Hilley,* 161 Tex. 569, 342 S.W.2d 565, 566 (Tex.1961)). In fact, over the years, the Texas Supreme Court rejected as unconstitutional the Legislature's attempts to statutorily allow spouses to agree to hold community property with a right of survivorship. *See id.* (citing *Williams,* 402 S.W.2d at 508; *Hilley,* 342 S.W.2d at 567).

In response, article XVI, section 15 of the Texas Constitution was amended in 1987 to expressly provide that "spouses may agree in writing that all or part of their community property becomes the property of the surviving spouse on the death of a spouse." *See id.* (quoting TEX. CONST. art. XVI, § 15 (1987)). In *Haynes v. Stripling,* the court discussed the intent driving the proposal to amend the constitution. *See* 812 S.W.2d 397, 399–400 (Tex. App.-Eastland 1991, no writ). The *Haynes* court quoted the following excerpt from the House Committee Resolution Analysis of Senate Joint Resolution 35, 70th Legislature, Regular Session, 1987, contained in the Legislative Reference Library:

Background Information

From 1840 to 1965, married couples could own community property with the right of survivorship in the state of Texas. *However, since 1965, Texas courts have persistently denied married couples an easy means of holding their property with right of survivorship.* Although it has long been relatively easy to create a right of survivorship in separate property, many banks and savings and loans associations have often failed to provide forms by which their customers can create effective joint tenancies out of community property. Many Texas spouses hold a substantial amount of assets in a form that is ineffective to achieve their desired purpose. Each of these accounts or transactions repre-

sents a potential lawsuit that may result in frustrating the intent of the spouses. *A simple means should be made available by which both spouses by a written instrument can provide that the survivor of them may be entitled to all or any designated portion of their community property without the necessity of making a will for that purpose.*

Purpose

*This proposed constitutional amendment will allow the people to provide that a Texas couple may hold community property with a right of survivorship in the surviving spouse.* This simple approach will obviate the need for creating a joint tenancy with a right of survivorship-a form of separate property ownership between spouses that is now used for this purpose. The accompanying legislation is SB 893.

*Id.* at 398–99 (some emphasis added and some emphasis in original omitted).

Thereafter, in 1989, the Legislature amended section 46 of the Probate Code, which generally addresses joint tenancies, to provide that "[a]greements between spouses regarding rights of survivorship in community property are governed by Part 3 of Chapter XI of this code." *See Haas*, 940 S.W.2d at 201–02 (quoting TEX. PROB. CODE ANN. § 46(b)). Thus, Part 3 came into being. *See id.* at 202 (citing TEX. PROB.CODE ANN. §§ 451–62).

█ Beatty derives several arguments from the above-cited history of the right of survivorship in community property. As Beatty asserts, section 450 was enacted in 1979-long before the 1987 constitutional amendment allowing spouses to create a right of survivorship in community property. *See* TEX. PROB.CODE ANN § 450. Thus, when section 450 was enacted, it was unconstitutional for spouses to own community property with a right of survivorship. A statute is presumed to have been enact-ed by the Legislature with complete knowledge of the existing law and with reference to it. *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex.1990); *Ellen v. Brazos County Bail Bond Bd.*, 127 S.W.3d 42, 47 (Tex.App.-Houston [14th Dist.] 2003, no pet.). Consequently, as Beatty asserts, we question that the Legislature could have intended for section 450 to be used by spouses to create a right of survivorship in community property when it was unconstitutional to do so under then-existing law.

Further, the above-emphasized portions of the legislative analysis for the then-proposed 1987 constitutional amendment indicate the Legislature saw the need for the amendment because there was no means at that time, short of partition, for spouses to hold community property with a right of survivorship property. Therefore, this analysis indicates that the Legislature did not view section 450, which had been in effect for eight years at the time of the analysis, as allowing spouses to create a right of survivorship in community property.

### 2. Language of Section 450

Beatty also contends that the explicit language of section 450 indicates it was not intended to be used to create a joint tenancy with right of survivorship in community property. As Beatty asserts, section 450 never addresses creation of a "right of survivorship" and does not contain the word "survivorship." *See* TEX. PROB.CODE ANN. § 450. By comparison, section 439 (contained in Part 1 of Chapter XI, governing multiple-party accounts in general) is entitled "Right of Survivorship"; *see* TEX. PROB.CODE ANN. § 439; and Part 3 is entitled "COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP." *See* TEX. PROB.CODE ANN. § § 451–462.

In addition, Beatty cites section 450(a)(1) which renders effective as a non-testamentary transfer a provision in one of the listed instruments stating *"that money or other benefits theretofore due to, controlled, or owned by a decedent "* shall be paid after his death to a designated person. *See* TEX. PROB.CODE ANN. § 450(a)(1) (emphasis added). Relying on the emphasized language, Beatty suggests section 450 applies to money, benefits, or property owned or controlled by, or payable to, a *singular* decedent—whether separate or community property. In contrast, he asserts that creation of a joint tenancy with right of survivorship constitutes an agreement between *two* or more persons providing that property they jointly own and control vests in the survivor upon the death of one party.[14] *See* TEX. PROB.CODE ANN. § 439 (governing multiple-party accounts in general); TEX. PROB.CODE ANN. § 452 (governing right of survivorship in community property). Thus, Beatty argues section 450 does not apply to joint management community property because that property cannot be "controlled" or "owned" by one spouse as set forth in section 450.

The intended scope of section 450, and particularly whether the Legislature meant for section 450 be used to create a joint tenancy with right of survivorship, especially in community property, presents a difficult question. On one hand, based on the development of the law on the right of survivorship in community property and the language of section 450, Beatty presents some persuasive arguments that the purpose of section 450 was not to create a right of survivorship, especially in community property.

On the other hand, if read in isolation, the language of section 450 might support Holmes's argument that it can be used to create a joint tenancy with right of survivorship in community property. Section 450 allows a decedent to provide in certain types of instruments effective as contracts, including securities, that money, property, or other benefits shall pass to a person designated by the decedent upon his or her death. *See* TEX. PROB.CODE ANN. § 450. Using survivorship language would seem to be a method of designating another person to receive a decedent's property at his or her death, although, as Beatty notes, section 450 does not contain the phrase "right of survivorship" or any "survivorship" language. *See id.* Moreover, although Beatty argues that section 450 was expressly made applicable to a singular decedent, under rules of statutory construction, "[t]he singular includes the plural and the plural includes the singular unless expressly provided otherwise." TEX. GOV'T CODE ANN. § 312.003(b) (Vernon 2005); *Holley*, 65 S.W.3d at 294 (rejecting argument that, pursuant to section 450's provision that decedent may designate a "person" to receive property, section 450 could not be used to validate decedent's designation of multiple sons to receive investment account because singular included the plural).

■ Nevertheless, we need not decide the full intended scope of section 450. Even if we agree that one of the intended purposes of section 450 was creation of a joint tenancy with right of survivorship in certain types of community property, as urged by Holmes and necessarily interpreted by the trial court, section 450 irreconcilably conflicts with Part 3. Signifi-

---

**14.** Similarly, although not specifically cited by Beatty, section 450(a)(3) renders effective as a non-testamentary transfer a provision in one of the listed instruments stating "that any property which is the subject of the instrument shall pass to a person designated *by the decedent.*" *See* TEX. PROB.CODE ANN. § 450(a)(3) (emphasis added).

cantly, section 450 does not require any signatures to effect a non-testamentary transfer under that provision. *See* TEX. PROB.CODE ANN. § 450. In contrast, Part 3 emphatically requires a written agreement signed by both spouse to create a right of survivorship in *all or part* of their community property. *See* TEX. PROB.CODE ANN. § § 451, 452. Therefore, allowing spouses to create a right of survivorship in certain types of community property pursuant to section 450 conflicts irreconcilably with the requirements of Part 3 for creating of a right of survivorship in community property. For the reasons explained below, we conclude that Part 3 is the controlling provision for creating a joint tenancy with right of survivorship in community property.

**3. Part 3 is the Controlling Provision for Creating a Joint Tenancy With Right of Survivorship in Community Property.**

 Under the rules of statutory construction, subject to an exception inapplicable here, if statutes enacted at the same or different sessions of the Legislature are irreconcilable, the statute latest in date of enactment prevails. *See* TEX. GOV'T CODE ANN. § 311.025(b) (Vernon 2005). As we have explained, Part 3 was enacted in 1989, long after section 450, which was enacted in 1979. Therefore, Part 3 is the controlling provision with respect to the requirements for creating a joint tenancy with right of survivorship in community property.[15]

Moreover, in this case, we need not rely solely on the fact that Part 3 was enacted after section 450. As Beatty argues, the language of the provisions comprising Part 3 and the legislative history behind enactment of Part 3 demonstrate joint tenancies with right of survivorship in community property are governed exclusively by Part 3.

As we have explained, shortly after the 1987 constitutional amendment allowing spouses to own community property with a right of survivorship, the Legislature amended section 46 and enacted Part 3. Section 46 expressly provides that "[a]greements between spouses regarding rights of survivorship in community property are governed by Part 3 of Chapter XI of this code." TEX. PROB.CODE ANN § 46(b). Section 46 contains no exception for the specific types of instruments addressed in section 450. *See id.* Rather, section 46 directs us solely to Part 3 when considering a right of survivorship in community property. *See id.* Thus, as Beatty argues, section 46 indicates Part 3 is the exclusive means for creating a right of survivorship in community property. *See id.*

Similarly, Part 3 contains no exception to the formalities required to create a right of survivorship in community property for the specific types of instruments addressed in section 450. *See generally* TEX. PROB.CODE ANN. §§ 451–462. In fact, Part 3 does not mention Part 2 (section

---

**15.** Initially, securities were not specifically included in the list of instruments effective as contracts under section 450. Instead, section 450 was amended in 1997 (after enactment of Part 3) to add securities to the list of instruments. *See* Act of Aug. 27, 1979, 66th Leg., R.S., ch. 713, § 31, 1979 Tex. Gen. Laws 1760–61, *amended by* Act of Sept. 1, 1997, 75th Leg., R.S. ch.1302, § 14, 1997 Tex. Gen. Laws 4959. However, the basic premise of section 450 that designations in instruments effective as contracts are valid non-testamentary transfers was in effect long before enactment of Part 3, although section 450 has been amended several times to include more types of instruments. *See id.* Accordingly, we consider Part 3 as the later enacted statute despite the subsequent amendments to section 450.

450) at all, or vice versa. *See generally id.*[16]

Furthermore, significantly, the *Haas* court recognized that, after the 1987 constitutional amendment and ensuing enactment of Part 3, a right of survivorship can be created in community property in either of two ways: (1) the community property can be partitioned into separate property and a joint tenancy with right of survivorship then created; or (2) alternatively, a right of survivorship can be created by agreement between the spouses as set forth in Part 3. *See Haas,* 940 S.W.2d at 202 (citing *Haynes,* 812 S.W.2d at 398–400). Although the *Haas* court did not mention section 450, the court indicated that Part 3 provides the only method for creating a right of survivorship in community property, other than partition into separate property. *See id.*

■ Beatty also cites a lengthy excerpt of testimony from a witness at a hearing in 1989 before the Senate Jurisprudence Committee considering the proposed legislation that would later amend section 46 of the Probate Code and enact Part 3. While the views of legislative committees as to the intended effect of a statute are not controlling, their views are entitled to great respect and some weight in arriving at the correct interpretation. *Cohen v. Rains,* 745 S.W.2d 949, 953–54 (Tex.App.-

Houston [14th Dist.] 1988, orig. proceeding) (citing *Nat'l Carloading Corp. v. Phoenix–El Paso Express Inc.,* 178 S.W.2d 133, 137 (Tex.Civ.App.-El Paso), aff'd, 142 Tex. 141, 176 S.W.2d 564 (1943)). The witness, Lisa Hyde, a member of the tax section of the State Bar and a member of the committee that prepared the bill, Senate Bill 1643, discussed issues concerning the formalities to be required for spouses to agree to hold their community property with a right of survivorship:

In 1987, as you know, the constitution was amended to permit spouses to agree to hold their community property with the right of survivorship. The intent of the constitution was to give spouses a simple means of transferring their property to the other spouse on the death of a spouse without having to do a will for that purpose.

And as a result of the constitutional amendment though a lot of questions have arisen and there are a lot of issues that remain open. So that we can hopefully keep the intent alive of having the simple agreement but yet providing protection to other persons, and also to have to facilitate the administration of the estate, we think that this is necessary.

*A lot of issues that have come up are what formalities are required for spous-*

---

**16.** According to Beatty, if the Legislature had intended section 450 to create a right of survivorship, it would have combined Part 2 (section 450) with Part 1 (governing right of survivorship in multiple-party accounts) or Part 3 (governing right of survivorship in community property). As a comparison, the Legislature *did* address interaction of Part 3 with Part 1: "The provisions of Part 1 apply to multiple party accounts held by spouses with a right of survivorship to the extent that such provisions are not inconsistent with the provisions of [Part 3]." Tex. Prob.Code Ann. § 462. Thus, the Legislature recognized a potential conflict between Part 3 and Part 1

and resolved it by mandating that Part 3 controls. The Legislature did not include a similar provision in Part 3 specifying that Part 3 controls to the extent of any conflict with Part 2 (section 450). Arguably, the fact that section 450 is not mentioned in Part 3 indicates the Legislature did not view section 450 as a means to create a "right of survivorship" in community property; thus, the Legislature did not conceive of a need to resolve any inconsistency and specify a controlling provision. Regardless, Part 3 contains no exception for the instruments listed in section 450.

es to enter into such an agreement. The constitution merely says that spouses may agree in writing that all or part of their property becomes the property of the survivor on the death of the spouse. And various people have asked what does agree in writing mean. And so this statute says that the spouses have to have *an agreement in writing that is signed by both spouses. Some commentators have speculated that merely having a written instrument that says or tells (Inaudible)—that that is community property with the right of survivorship would be sufficient.*

*They think that if you had a stock certificate that was that way, or if someone conveyed property—you know, real property to a husband or wife by deed that said that it was going to them as community property with the right of survivorship that would suffice. And we don't think that it should because there is too much of a possibility for fraud in that situation. Because one spouse could arrange for them to take title to property with a right of survivorship without the knowledge of the other spouse.*

So we think you should have to have an agreement that both spouses sign.

*Hearing on Tex. S.B. 1643 Before the Senate Jurisprudence Comm.,* 71st Leg., R.S. 33–34 (May 4, 1989) (testimony of Lisa Hyde) (emphasis added). After further discussion on other subjects relative to the bill, Hyde continued:

I want you-all to understand how important we feel this statute is because I think if we don't get a statute and get some clarification on these issues that there will be a lot of litigation in the next several years. Because people have been and will continue to do these types of agreements. *Particularly, peo-*

*ple have stock certificates all the time that are issued that purport to be held with the right of survivorship, and in the past before the '87 amendment, we could just ignore that and say well, it is not a valid form of holding title to properties that was community property.* We don't have that certainty any more and we need it, because especially where someone has a will that dispos[es] of their property to someone other than their surviving spouse and then they've title documents that say that it is held in with the right of survivorship.

So we feel like it is very important that we have this and that it will be a certainty in this area.

*Id.* at 40 (emphasis added).

Beatty states that Hyde's testimony demonstrates the drafters of the bill resulting in amendment of section 46 and enactment of Part 3 and the Legislature were concerned about the exact issue involved in this case—that spouses would seek to use designations on security certificates to create a right of survivorship. According to Beatty, Hyde's testimony further indicates Part 3 was enacted to alleviate these concerns by requiring a written agreement signed by both spouses.

We agree that the above-emphasized portions of Hyde's testimony indicate the drafters of the bill resulting in amendment of section 46 and enactment of Part 3 viewed instruments, including securities and deeds, which merely indicate they are held with a right of survivorship as insufficient to create a right of survivorship in community property. Therefore, Hyde's testimony implicitly indicates that the drafters did not consider the existing section 450 as effective to create a right of survivorship in the types of instruments

listed therein, if community property.[17] Instead, the drafters of the bill urged that an agreement in writing *signed by both spouses* should be required. And, indeed, such an agreement is required pursuant to the subsequently enacted Part 3. Tex. Prob.Code Ann § 452.

In addition, although we have found no authority addressing the dispute at issue in this appeal, we note that at least one commentator has seemed to adopt a similar interpretation: "A deed or stock certificate issued to a husband or wife as community property with right of survivorship does not, in itself, create a right of survivorship because the instrument lacks the signatures of the spouses." Elizabeth Williams, Interspousal Agreements and Transfers, 3 Tex. Fam. L. Serv. § 24.22 (West 1999). Clearly, this commentator opined that spouses must comply with section 452, which requires both spouses' signatures, to create a right of survivorship in certain types of instruments, including securities, owned as community property.

Finally, in contrast, Holmes contends the express language of section 450 indicates the statute may be used to create a right of survivorship in community property. Specifically, section 450 states that "this code does not invalidate" a provision in one of the listed instruments providing that the instrument or money or property be paid to a designated person upon the decedent's death. *See* Tex. Prob.Code Ann

§ 450. Therefore, according to Holmes, the spouses' failure to comply with Part 3 does not invalidate such a provision in their securities.

However, the above-quoted phrase was included in section 450 at its inception. *See* Act of Aug. 27, 1979, 66th Leg., R.S., ch. 713, § 31, 1979 Tex. Gen. Laws 1760–61. Because Part 3 did not exist at that time, the quoted phrase cannot have been intended to refer to Part 3. Rather, the quoted phrase apparently refers to the provisions of the Probate Code governing testamentary transfers of property.

To illustrate, in *Holley*, the court determined a provision in an investment account stating that, upon the owner's death, the account would be divided equally among his five children was a valid non-testamentary transfer under section 450. *See* 65 S.W.3d at 291–93. To reach this conclusion, the court of appeals considered the comment to the section of the Uniform Probate Code on which section 450 was based. *Id.* at 293; *see also* Tex. Prob.Code Ann. § 450 historical note. The author of the comment explained that the purpose of the section was to "authorize[ ] a variety of contractual arrangements which have in the past been treated as *testamentary.*" *Holley*, 65 S.W.3d at 293 (quoting Unif. Probate Code § 6–201 cmt.) (emphasis added).

**17.** At the time of Hyde's testimony, securities were not yet included in the list of instruments effective as contracts under section 450. *See* Act of Aug. 27, 1979, 66th Leg., R.S., ch. 713, § 31, 1979 Tex. Gen. Laws 1760–61, *amended by* Act of Sept. 1, 1997, 75th Leg., R.S. ch.1302, § 14, 1997 Tex. Gen. Laws 4959. However, it is clear Hyde's opinion that a designation on a securities certificate is insufficient to create a right of survivorship in community property was not based on the mere fact that securities were not included in section 450. Hyde also mentioned that a designation on a conveyance of real property was insufficient to create a right of survivorship. At the time of her testimony, a "conveyance of real or personal property" *was* specifically included in the list of instruments effective as contracts under section 450. *See* Act of Aug. 27, 1979, 66th Leg., R.S., ch. 713, § 31, 1979 Tex. Gen. Laws 1760–61. Thus, her testimony implicitly indicates the drafters of the bill resulting in Part 3 did not consider section 450 as effective to create a right of survivorship in certain instruments, if community property.

The Senate Jurisprudence Committee bill analysis for section 450 affirms its intended application:

The *provisions of a will* are expressly made inapplicable to provisions for payment or withholding of monies in the form of other non-testamentary transfers arising by contract or gift. (i.e. provisions for the payment or withholding of money at death in an insurance policy, contract of employment, bond, mortgage, promissory note, deposit agreement, pension plan, trust agreement, conveyance of real or personal property, or any other instrument affecting the contract, gift or conveyance or trust).

SENATE JURISPRUDENCE COMM., BILL ANALYSIS, Tex. H.B. 329, 66th Leg., R.S. (1979) (emphasis added). Thus, when stating in section 450 that "this code does not invalidate" a provision in one of the listed instruments providing money or property be paid to a designated person upon the decedent's death, the Legislature was referring to the testamentary provisions of the Code—not Part 3 of Chapter XI, enacted after section 450.

In sum, we conclude that section 450 cannot be utilized to create a joint tenancy with right of survivorship in community property because the subsequently-enacted Part 3 provides the exclusive method for creating a right of survivorship in community property. Accordingly, the trial court erred by ruling that the securities in certificate form were owned by Kathryn and Thomas with a right of survivorship pursuant to section 450 and thus holding the account is the property of Holmes, as an asset of Thomas's Estate. We sustain Beatty's second issue.

## V. Conclusion

Is sum, we hold the trial court erred by granting summary judgment in Holmes's favor with respect to all property that is the subject of this appeal. Accordingly, we reverse the "Summary Judgment" dated March 11, 2003 with respect to the Dain Rauscher account and the securities in certificate form listed in the order and remand for further proceedings consistent with this opinion. Because Beatty does not challenge the trial court's ruling relative to the Kemper Securities, Inc. account, we affirm the "Summary Judgment" with respect to that account.